# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **EDAR ROGLER,** | ) | |
| | ) | |
| **Plaintiff *pro se*,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-0570 (RMC)** |
| | ) | |
| **U.S. DEPARTMENT OF HEALTH AND** | ) | |
| **HUMAN SERVICES, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY MOTION FOR SUMMARY JUDGMENT

Defendants, through their undersigned attorneys, hereby respectfully move the Court, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the claims against Defendants herein on the grounds that the Court lacks subject matter jurisdiction, and Plaintiff has failed to state a claim upon which relief can be granted. Alternatively, Defendants respectfully move, pursuant to Fed. R. Civ. P. 56, for summary judgment on the grounds that there are no genuine issues of material fact and, therefore, Defendants are entitled to judgment as a matter of law. The Court is respectfully referred to the accompanying Memorandum of Points and Authorities in Support, and Statement of Material Facts To Which There Is No Genuine Issue. A proposed Order is also attached.

*Pro se* Plaintiff will please take note that the assertions contained in the accompanying declarations and other attachments in support of Defendants' motion will be accepted by the Court as true unless Plaintiff submits her own affidavit or other documentary evidence

contradicting the assertions in Defendants' declarations or attachments.  *See Neal v. Kelly*, 963

F.2d 453, 456 (D.C. Cir. 1992), and Local Rule 7(h).  Furthermore, Rule 56(e) of the Federal

Rules of Civil Procedure provides that:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.  If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.  The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.
>
> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must –by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

Because this is a dispositive motion, Defendants have not sought Plaintiff's consent

before filing.  LCvR 7(m).

Respectfully submitted,

  /s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_/s/_ _____
JUDITH A. KIDWELL
Assistant United States Attorney
555 Fourth Street, N.W.- Civil Division
Room E4905
Washington, D.C. 20530
(202) 514-7250

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| | ) |
| **EDAR ROGLER,** | ) |
| | ) |
| **Plaintiff *pro se*,** | ) |
| | ) |
| **v.** | )    **Civil Action No. 08-0570 (RMC)** |
| | ) |
| **U.S. DEPARTMENT OF HEALTH AND** | ) |
| **HUMAN SERVICES, *et al.*,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to LCvR 7(h), Defendants hereby submit the following statement.

1.  In November 2005, Plaintiff was hired as a contract Associate Chaplain for the National Institutes of Health ("NIH"), U.S. Department of Health and Human Services ("DHHS").  Defendants' Exhibit ("Def. Exh.") A.

2.  Plaintiff's contract was subsequently terminated.  Complaint ("Compl.") ¶ 24.

3.  In January 2006, Plaintiff was listed as a potential witness for the complainant in an Equal Employment Opportunity Commission ("EEOC") proceeding.  Compl. ¶ 23.

4.  In response to the request to call Plaintiff as a witness, DHHS objected on the basis of bias and sent the opposing counsel certain documents, including a copy of Plaintiff's contract termination letter.   Def. Exh. B.

5.  As part of the same EEOC proceeding, DHHS counsel sent the Administrative Judge, David Norken, an opposition to Plaintiff being called as a witness.  Def. Exh. C.  This opposition did not include a copy of Plaintiff's termination letter. *Id*.

6.   In January 2006, Plaintiff knew that her records had been disclosed for purposes of the EEOC proceedings.  Compl. ¶¶ 25, 27.

Respectfully submitted,

 /s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

 /s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

 /s/
JUDITH A. KIDWELL
Assistant United States Attorney
555 Fourth Street, N.W.- Civil Division
Room E4905
Washington, D.C. 20530
(202) 514-7250

2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ | ) |
| **EDAR ROGLER,** | ) |
| | ) |
| **Plaintiff *pro se*,** | ) |
| | ) |
| **v.** | )  **Civil Action No. 08-0570 (RMC)** |
| | ) |
| **U.S. DEPARTMENT OF HEALTH AND** | ) |
| **HUMAN SERVICES, *et al.*,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**OR ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT**

**Preliminary Statement**

On April 2, 2008, Plaintiff filed this action asserting jurisdiction under the Privacy Act, 5 U.S.C. § 552 *et seq*., the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522, as amended, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202,[1] naming as Defendants, the U.S. Department of Health and Human Services ("DHHS"), and Rev. Owen Ray Fitzgerald, in his individual and official capacities.  Complaint ("Compl."), at 2 (unnumbered paragraph) and ¶¶ 4, 5.  Plaintiff asserts that she is seeking:  (1) compliance with the Privacy Act pursuant to 5 U.S.C. §§ 552a(g)(1) and 552a(e)(7); (2) an amendment under 5 U.S.C. § 552a(g)(1)(A); (3) access under 5 U.S.C. § 552a(g)(1)(B); (4) compensatory and other damages under 5 U.S.C.

---

[1] The Declaratory Judgment Act, 28 U.S.C. § 2201, is not an independent source of federal jurisdiction, but merely provides an additional remedy once jurisdiction is found to exist. The Privacy Act does not authorize declaratory relief.  *See Rice v. United States*, 245 F.R.D. 3 (D.D.C. 2007) (citing *Hastings v. Judicial Conference*, 770 F.2d 1093, 1104 (D.C. Cir. 1985)).

§§ 552a(g)(1) and (g)(1)(D); and accuracy under 5 U.S.C. § 552a(g)(1)(D).  Compl. at 2

(unnumbered paragraph).

Plaintiff's primary arguments are that DHHS failed to expunge and improperly disclosed

her records in violation of the Privacy Act.  Compl. ¶¶ 32, 33, 36, 38, 42.  She seeks monetary

damages of $3 million dollars,[2] injunctive and declaratory relief,[3] costs and attorneys fees,[4] and a

referral of DHHS officials for criminal prosecution. Compl. at 9-10 (Prayer for Relief).

As explained below, all claims against Defendants should be dismissed because:

(1) Individuals cannot be sued under the Privacy Act or the FOIA, and therefore, Defendant

Fitzgerald is an improper party to this suit; (2) Plaintiff's claims are barred by the Privacy Act's

two-year statute of limitations; (3) Plaintiff has failed to state a claim on which relief can be

granted under the Privacy Act because DHHS has legally maintained and disseminated

---

[2] Plaintiff alleges that as a result of DHHS' unlawful disclosures "individuals, including Plaintiff have suffered economic and non-economic damages."  Complaint ¶ 45.  Plaintiff fails to describe her economic loss or identify these "other individuals."  In any event, Plaintiff does not have standing to seek any relief on the behalf of other unidentified individuals.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (plaintiff must show that he has suffered an injury in fact–an invasion of a legally protected interest which is concrete and particularized).

[3] Included within her requests for injunctive relief are requests for the Court to order the Secretary of DHHS "to make an official statement to all news organizations and prominently post a statement on the DHHS website that: (a) DHHS violated the Privacy Act in making Illegal DHHS Rogler Privacy Act Information Disclosures; and (b) the allegations against Plaintiff Rogler in the Illegal DHHS Rogler Privacy Act Information Disclosures are unfounded and without merit," and an "expunge[ment] [of] all records or information maintained by DHHS that is inaccurate and/or derogatory to Edar Rogler and unlawfully collected and maintained." Compl., Relief Prayed For Against Defendant DHHS.

[4] Although *pro se* in this action, according to Plaintiff, she is licensed as an attorney in the States of California and Texas.  In the unlikely event that she prevails on any of her claims in this action, it is questionable that she will be entitled to any attorney fees.  *See Kay v. Ehrler*, 499 U.S. 432 (1991); *Burka v. United States Dep't of Health and Human Servs.*, 142 F.3d 1286 (D.C. Cir. 1998).

information concerning Plaintiff; and (4) Plaintiff has failed to state a claim upon which relief

can be granted against Defendants under the FOIA.  In the alternative, Defendants should be

granted summary judgment, because there are no genuine issues of material fact and Defendants

are, therefore, entitled to judgment as a matter of law.

## I.  FACTUAL BACKGROUND

In November 2005, Plaintiff was hired as a contract Associate Chaplain for the National

Institutes of Health ("NIH"), DHHS.  *See* Def. Exh. A.  Plaintiff's contract was subsequently

terminated.  Compl. ¶ 24.  In January 2006, Plaintiff was listed as a potential witness for the

complainant in an EEOC proceeding.  Compl. ¶ 23.  In response to the request to call Plaintiff as

a witness, DHHS objected on the basis of bias and sent the opposing counsel certain documents,

including a copy of Plaintiff's contract termination letter.[5]  *See* Def. Exh. B.  As part of the same

EEOC proceeding, DHHS counsel sent the Administrative Judge, David Norken, an opposition

to Plaintiff being called as a witness.  *See* Def. Exh. C.[6]  This opposition did not include a copy

of Plaintiff's termination letter.  *Id.*

---

[5] Plaintiff's allegation that on or about January 5, 2006, an employee of Defendant DHHS
transmitted a copy of Plaintiff's contract termination letter to an EEOC administrative judge in
response to Plaintiff having been listed as a potential witness in an EEO proceeding (Compl.
¶¶ 24-25), is contradicted by these documents.

[6] As shown by DHHS' Opposition, the agency was objecting to Plaintiff being called as a
witness on the basis of bias because her contract had been terminated in December 2005.  *See*
Def.  Exh. C.

## II.  LEGAL STANDARDS OF REVIEW

### A.  Motion to Dismiss Under Rule 12(b)(1)

A motion under 12(b)(1) "presents a threshold challenge to the court's jurisdiction."

*Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  "In reviewing a motion to dismiss for

lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must

accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in

the plaintiff's favor." *Thompson v. Capitol Police Bd.*, 120 F. Supp. 2d 78, 81 (D.D.C. 2000)

(citations omitted).  "The court is not required, however, to accept inferences unsupported by the

facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F.

Supp. 2d 61, 64 (D.D.C. 2001) (citations omitted), *affirmed*, 346 F.3d 192 (D.C. Cir. 2003), *cert.*

*denied*, 543 U.S. 809 (2004).  In addition, "[o]n a motion to dismiss pursuant to Rule 12(b)(1),

the plaintiff bears the burden of persuasion to establish subject-matter jurisdiction by a

preponderance of the evidence." *Thompson*, 120 F. Supp. 2d at 81.

A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Fed.

R. Civ. P. 12(b)(1) in two ways.  First, the court may determine the motion based solely on the

complaint.  *Herbert v. National Academy of Science*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations

of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the

conflicting evidence.  *Id.*

Usually, courts must liberally construe pleadings submitted by a *pro se* party.  *See United*

*States* v. *Palmer*, 296 F.3d 1135, 1143 (D.C. Cir. 2002) (citing *Haines v. Kerner*, 404 U.S. 519,

520 (1972), for the proposition that the allegations of a *pro se* litigant, "however inartfully

4

pleaded," are subject to "less stringent standards than formal pleadings drafted by lawyers".).

However, in this case, Plaintiff is a lawyer and has filed numerous legal actions.[8]  Moreover,  a

court may not entertain "what[ever] claims a [*pro se* litigant] may or may not want to assert"

without an adequate jurisdictional basis.  *Jarrell v. Tisch*, 656 F.Supp. 237, 239 (D.D.C. 1987).

### B.    Motion to Dismiss Under Rule 12(b)(6)

On a motion to dismiss for failure to state a claim upon which relief can be granted

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court will dismiss a claim

if Plaintiff's complaint fails to plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atlantic Corp. v. Twombly*,  — U.S. —, 127 S.Ct. 1955, 1974 (2007) (clarifying the

standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Aktieselskabet v. Fame

Jeans, Inc.*,--F.3d--, 2008 WL 1932768 (D.C. Cir. Apr. 29, 2008); *In re Sealed Case*, 494 F.3d

139, 145 (D.C. Cir. 2007) (citing *Twombly*).  Hence, the focus is on the language in the

complaint, and whether that language sets forth sufficient factual allegations to support a

plaintiff's claims for relief.

The Court must construe the factual allegations in the complaint in light most favorable

to Plaintiff and must grant Plaintiff the benefit of all inferences that can be derived from the facts

as they are alleged in the complaint.  *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004)

(citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  However, the

Court need not accept any inferences or conclusory allegations that are unsupported by the facts

pleaded in the complaint.  *Kowal*, 16 F.3d at 1276.  Moreover, the Court need not "accept legal

conclusions cast in the form of factual allegations."  *Id*.

---

[8] *See* Def. Exhs. D, E.

5

C.    <u>**Motion for Summary Judgment Under Rule 56**</u>

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   To determine which facts are material, the Court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the Court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  *Id.*, at 255.  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of his position.  *Id*. at 252.  By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. at 322.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc*., at 249-250.  The non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Radio Corp*., 475 U.S. 574, 586 (1986).

D.    <u>**The Privacy Act**</u>

The Privacy Act provides for four separate and distinct civil causes of action, *see* 5 U.S.C. § 552a (g), two of which provide for injunctive relief (amendment lawsuits under (g)(1)(A) and access lawsuits under (g)(1)(B)), and two of which provide for compensatory relief

6

in the form of monetary damages (accuracy lawsuits under (g)(1)(C) and lawsuits for other

damages under (g)(1)(C)).  However, an individual must bring his or her claim under the Privacy

Act "within two years from the date on which the cause of action arises."  5 U.S.C. § 552a (g)(5).

### III.  ARGUMENT

### A.  DEFENDANT FITZGERALD IS AN IMPROPER PARTY TO A PRIVACY ACT SUIT OR FOIA ACTION[9]

In her complaint, Plaintiff names Rev. Fitzgerald as a Defendant in his official and

personal capacities.  *See* Compl. Heading.  However, the Privacy Act does not allow a person to

seek civil remedies against individuals.  *See Brown-Bey v. United States,* 720 F.2d 467, 469 (7th

Cir. 1983); *Armstrong v. United States Bureau of Prisons*, 976 F.Supp. 17, 23 (D.D.C. 1997).

Pursuant to 5 U.S.C. § 552a(g)(1), "the individual may bring a civil action against the agency."

The term "agency" is defined to include "any executive department, military department,

Government corporation, Government controlled corporation, or other establishment in the

executive branch of the Government . . . or any independent regulatory agency."  5 U.S.C.

§ 552(f)(1).  The term does not include individual officers or employees of an agency.

*Armstrong v. United States Bureau of Prisons*, 976 F.Supp. at 23 (citing *Williams v.*

*McCausland*, 791 F.Supp. 992, 1000 (S.D.N.Y. 1992)).

Similarly, the only proper defendant in a FOIA case is a federal agency.  *Jefferson v.*

---

[9] Plaintiff has made no factual allegations to support a *Bivens* claim against Defendant Fitzgerald.  Moreover, she has named him in a separate action before this court which includes *Bivens* claims.  *See* Civil Action No. 07-2308 (RMC).  However, in the event that any of Plaintiff's claims are interpreted as claims brought against him in a personal capacity under *Bivens,* Defendant Fitzgerald reserves the right to argue that: (a) the Court lacks personal jurisdiction over him; (b) he is entitled to qualified immunity;  and (c) the comprehensive remedial scheme of the Privacy Act precludes any recovery against him under *Bivens.  See Chung v. U.S. Department of Justice*, 333 F.3d 273, 274 (D.C. Cir. 2003).

*Reno*, 123 F.Supp.2d 1, 3 (D.D.C. 2000) (under FOIA, it is the agency's responsibility to produce

the requested documents); *Whittle v. Moschella*, 756 F.Supp. 589, 596 (D.D.C. 1991) (citing

*Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) (holding that the Court's jurisdiction is

"limited to enjoining agency noncompliance . . .".).  Accordingly, Defendant Fitzgerald should be

dismissed as a party to this suit.

### B.  PLAINTIFF'S PRIVACY ACT CLAIMS ARE BARRED BY A TWO-YEAR STATUTE OF LIMITATIONS

An action pursuant to the Privacy Act may be brought within two years from the date on

which the cause of action arises.  5 U.S.C. § 552a(g)(5); *Bernard v. United States Dep't of*

*Defense*, 362 F. Supp.2d 272, 278 (D.D.C. 2005).  Generally, a Privacy Act cause of action arises

at the time that a plaintiff knows or should know of an alleged violation.  *Tijerina v. Walters*, 821

F.2d 789, 798 (D.C. Cir. 1987) (the critical issue for determining whether the plaintiff's action is

barred is the time at which the plaintiff knew or had reason to know of his cause of action).

Unless the statute of limitations is equitably tolled,[10] the late filing of a Privacy Act claim

deprives the court of subject matter jurisdiction.  *Conklin v. U.S. Bureau of Prisons*, 514 F.

Supp.2d 1, 4 (D.D.C. 2007 (citing *Chung v. United States Dep't of Justice*, 333 F.3d 273, 276-78

(D.C. Cir. 2003)).

Plaintiff filed her action on April 2, 2008.  *See* Docket No. 1.  Therefore, in order for her

Privacy Act claims to be timely, Plaintiff's cause of action would have had to have arisen after

April 2, 2006.  However, according to Plaintiff's allegations, she knew that DHHS had disclosed

---

[10] Plaintiff would be hard-pressed to make a case for equitable tolling in light of the fact that she is an attorney, filed and litigated a similar suit in the District of Maryland, but voluntarily dismissed the action before any resolution by the Court.  *See* Def. Exhs. F, G.

her records to others in January 2006, when she was listed as a potential witness in an EEOC proceeding.  Compl. ¶¶ 22 (a)-(e), 23.  Moreover, Plaintiff concedes that her allegation concerning DHHS' transmittal of a letter to an EEOC Administrative Judge occurred " on or about January 5, 2006."  Compl. ¶¶ 24, 25, 28.  Inasmuch as both of these dates are well outside the two-year statute of limitations period, Plaintiff's Privacy Act claims are barred by the statute of limitations and should be dismissed.  Alternatively, Defendants are entitled to judgment as a matter of law.

### C. PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER THE PRIVACY ACT

#### 1. Plaintiff Fails To Allege Any Facts For Her Access Claims

In her complaint, Plaintiff alleges that she is seeking access to her records pursuant to the Privacy Act.  *See* Compl. at 2 (unnumbered paragraph).  However, Plaintiff fails to allege any facts that suggest that she sought and was denied access to her records by DHHS.   Accordingly, Plaintiff's claims in this regard should be dismissed.

#### 2. Plaintiff Fails To Allege Any Facts To Support Her Allegations That DHHS Unlawfully Obtained Information About Her

Plaintiff alleges that DHHS violated 5 U.S.C. § 552a(e)(2) of the Privacy Act.  Compl. ¶ 48.  However, given Plaintiff's vague allegations,  it is unclear how DHHS purportedly violated this subsection of the Privacy Act.[11]

In any event, section 552a(e)(2) provides that agencies shall collect information to the greatest extent practicable directly from the subject individual when the information may result

---

[11] Plaintiff's complaint states that the "conduct of DHHS alleged in paragraphs 1-, violated: A. Subsection (e)(2) of the Privacy Act.  DHHS did not 'collect information to the greatest extent practicable directly from' Edgar rogler." [sic] *See* Compl. ¶ 48.

in adverse determinations about an individual's rights, benefits, and privileges under Federal programs. 5 U.S.C. § 552a(e)(2). To prevail on her claims that DHHS violated this subsection, Plaintiff must show that the: (1) agency failed to elicit information directly from her to the greatest extent practicable; (2) violation of the Privacy Act was intentional or willful; and (3) action had an adverse affect on her. *Waters v. Thornburgh*, 888 F.2d 870, 872 (D.C. Cir. 1989); *Velikona v. Mueller*, 362 F. Supp.2d 1, 19 (D.D.C. 2004); *Olivares v. National Aeronautics and Space Admin.*, 882 F. Supp. 1545, 1549 (D.M.D. 1995).

However, Plaintiff has provided no factual support in her complaint for her allegations in this regard. She fails to adequately describe the information that was improperly obtained or explain how obtaining information was intentionally unlawful. Significantly, Plaintiff also fails to allege any facts to support her contention that any information which might have been obtained from anyone resulted in an adverse determination with respect to her rights, benefits, and privileges under Federal programs. Accordingly, any alleged claims pursuant to 5 U.S.C. § 552a(e)(2) should be dismissed.

### 3. **DHHS Did Not Maintain Records On Plaintiff In Violation of the Privacy Act**

Plaintiff makes vague and cursory allegations that DHHS and its employees[12] improperly maintained a system of records concerning her and others[13] in violation of 5 U.S.C. §§ 552a(e)(1) and 552a(e)(7). Compl. ¶¶ 22(d), 32, 36, 38, 40, 43, 45. As discussed below, DHHS' system of records complies with the Privacy Act and is not in violation of 5 U.S.C. § 552a(e)(7).

---

[12] As discussed *supra*, individual employees of DHHS cannot be sued under the Privacy Act.

[13] As discussed *supra*, Plaintiff does not have standing to bring Privacy Act claims on behalf of any unidentified individuals.

a.  **5 U.S.C. § 552a(e)(1)**

Plaintiff alleges that DHHS unlawfully maintains confidential records about her in a system of records that is not designed to accomplish any legal purpose.  Compl. ¶ 42.  She alleges that the maintenance of these records "is part of a pattern of willful and intentional misconduct undertaken for the purposes of attacking or threatening attacks on Plaintiff and others similarly situated."  *Id*.[14]

However, the Privacy Act is not violated by DHHS' maintenance of records or information concerning Plaintiff to the extent that such records or information are relevant and necessary to accomplish a purpose required to be accomplished by statute or by Executive Order of the President.  5 U.S.C. § 552a(e)(1).  Indeed, the Privacy Act is not violated so long as the maintenance of any information at issue is relevant and necessary to accomplish a legal purpose of the agency.  *See, e.g., Reuber v. United States*, 829 F.2d 133, 139-40 (D.C. Cir. 1987); *National Treasury Employees Union v. IRS*, 601 F. Supp. 1268, 1271 (D.C.C. 1985).

Pursuant to the requirements of 5 U.S.C. 552a(e)(4), the Office of Personnel Management ("OPM") and NIH have published Federal Register notices describing the systems of records of each agency that are protected by the Privacy Act.  The General Personnel Records system maintained by OPM consists of a variety of records relating to current and former Federal employees, volunteers, grantees, and contract employees.  *See* 71 Fed. Reg. 35342 (June 10, 2006).  This system of records provides the basic source of factual data about an individual's

---

[14] Here again, Plaintiff attempts to make allegations on behalf of other unidentified individuals for which she does not have standing.

11

employment with, or provision of services to, the Federal government, even after an individual's

separation or termination. *Id.*; *see also* 5 U.S.C. §§ 1302, 2951, 3301, 3372, 4118, and 8347;

Executive Order Nos. 9397, 9830, and 12107. Furthermore, NIH maintains a system of records,

pursuant to the Privacy Act, which covers a wide variety of individuals which have been

employed by NIH, including, but not limited to, contractor personnel. *See* 67 Fed. Reg. 60742

(Sept. 26, 2002). This system properly maintains current and historical information pertaining to

contracts awarded by the NIH. *Id.* S*ee also* 5 U.S.C. § 301; 42 U.S.C. § 217a, 241, 282(b)(6),

284a, and 288; 48 C.F.R. Subparts 15.3 and 42.15.

Consistent with the Act, the agency has published in the Federal Register numerous

examples of employee-related and contractor-related records which may be lawfully maintained

as a system of records within the parameters of the Privacy Act. Plaintiff provides no facts or

legal authority to support her general allegations that her records fall outside of the parameters of

a system of records or have been improperly maintained by DHHS.

Furthermore, Plaintiff's claims that NIH should have expunged her application after she

withdrew from consideration for a position, runs afoul of the Federal Records Act ("FRA"),

which governs the creation, management, and disposal of federal records by federal agencies.

*See* 44 U.S.C. §§ 2101 *et seq.*, 2901 *et seq.*, 3101 *et seq.*, 3301 *et seq.* The FRA is intended to

assure, *inter alia*, the accurate and complete documentation of the policies and transactions of the

Federal government and judicious preservation and disposal of records. *See Armstrong v.*

*Executive Office of the President*, 1 F.3d 1274, 1278 (D.C. Cir. 1993) (discussing the collection

of statutes known collectively as the FRA). In fact, the Records Disposal Act ("RDA") portion

of the FRA establishes the means by which records, subject to the FRA, may be discarded and

requires an agency to get the approval of the Archivist before disposing of any record.  *See* 44

U.S.C. § 3314.  For these purposes, "records" are defined as:

> all books, papers, maps, photographs, machine readable materials,
> or other documentary materials, regardless of physical form or
> characteristics, made or received by an agency of the United States
> Government under Federal law or in connection with the transaction
> of public business and preserved or appropriate for preservation by that
> agency or its legitimate successor as evidence of the organization, functions,
> policies, decisions, procedures, operations, or other activities of the
> Government or because of the informational value of data in them.
> Library and museum material made or acquired and preserved solely
> for reference or exhibition purposes, extra copies of documents
> preserved only for convenience  of reference, and stocks of
> publications and of processed documents are not included.

44 U.S.C. § 3301.  If a document qualifies as a record under the FRA, an agency should not

discard it unless otherwise authorized to do so.  *Armstrong v. Executive Office of the President*, 1

F.3d at 1278 (citing *American Friends Serv. Comm. v. Webster*, 720 F.2d 29, 62 (D.C. Cir.

1983)).

The National Archives and Records Administration ("NARA") has promulgated

regulations regarding records management.  *See* 36 C.F.R. parts 1220, 1222.  The NARA

regulations list the following test for identifying documentary materials as records:

> (1) They are made or received by an agency of the United States Government under
> Federal law or in connection with the transaction of agency business; and

> (2) They are preserved or are appropriate for preservation as evidence of agency
> organization and activities or because of the value of the information they contain.

36 C.F.R. § 1222.34(b).

In this case, NIH has a record retention schedule that has been approved by the Archivist

and covers Plaintiff's employment application.  *See* NIH Records Schedule 2600-A-4.  This

schedule explains when NIH can legally dispose of this record.  *Id*.  Additionally, the schedule

specifies that routine procurement files, such as contract requisitions, purchase orders, and

correspondence and related papers pertaining to awards, receipt, inspection, and payment of

contract awards of $25,000 or less are to be destroyed three (3) years after final payment.  *Id*.

### b.  5 U.S.C. § 552a(e)(7)

Plaintiff also alleges that by maintaining her application, DHHS violated 5 U.S.C.

§ 552a(e)(7).  Compl. at 2 (unnumbered paragraph, ¶¶ 14,15, 36, 40, 43.  She alleges that in the

fall of 2004, she submitted a "highly confidential application protected by the First Amendment

 and a priest/penitent privilege."  Compl. ¶ 15.

The Privacy Act prohibits federal agencies from maintaining records "describing how any

individual exercises rights guaranteed by the First Amendment unless expressly authorized by

statute or by the individual about whom the record is maintained or unless pertinent to and within

the scope of an authorized law enforcement activity."  5 U.S.C. § 552a(e)(7) .  However, Plaintiff

provides no facts in her complaint concerning the information in her application which describes

the exercise of her First Amendment rights.  Moreover, if such information is contained in her

application, Plaintiff is the one who provided the information in the application and, therefore,

authorized the maintenance of such information.

In a similar vein, Plaintiff fails to support her vague allegation that her application, or

information contained therein, is covered by a "priest/penitent privilege."[15]  Compl. ¶ 15.  This

privilege is generally applicable to communications between penitent and clergy, yet Plaintiff

---

[15] This privilege is also referred to as the clergy-penitent privilege or the cleric-congregant privilege.  *See Cox v. Miller*, 296 F.3d 89, 102 (2nd Cir. 2002) (discussing the origin of the privilege and the fact that it was unknown at common law).

fails to identify any communications contained in her application or how they might be considered privileged.  Accordingly, Plaintiff's claims in this regard should be dismissed.

### 4.  **DHHS Did Not Unlawfully Disseminate Information About Plaintiff**

Plaintiff alleges that DHHS and its employees unlawfully disclosed her application and the letter terminating her contract.  Compl. ¶¶ 22(e), 25, 28, 32, 33, 36, 42, 44, 45, 47.  She, however, fails to provide any facts concerning her general allegation that DHHS disclosed her contract termination letter to the public.  Compl. ¶ 28.  Nor does she identify the non-federal employee or others to whom DHHS' employees allegedly disclosed her records.  Compl. ¶ 33, 42.[16]

In any event, to prevail on an unlawful disclosure claim for monetary damages, a plaintiff must show that the:  (1) disclosed information is a record contained within a system of records; (2) agency improperly disclosed the information; (3) disclosure was willful or intentional; and (4) disclosure adversely affected the plaintiff.  *Mulhern v. Gates*, 525 F.Supp.2d 174 (D.C.C. 2007); *Runkie v. Gonzales*, 391 F. Supp.2d 210 (D.C.C. 2005).  Generally, a plaintiff bears the burden of demonstrating that a disclosure by the agency has occurred.  *See, e.g., Zerilli v. Smith*, 656 F.2d 705, 715-16 (D.C. Cir. 1981).

Furthermore, the Privacy Act provides an exception for "those officers and employees of the agency which maintains the records who have a need for the record in the performance of their duties."  5 U.S.C. § 552a(b)(1).  This "need to know" exception authorizes the intra-agency disclosure of a record for necessary official purposes.  *See* OMB Guidelines, 40 Fed. Reg.

---

[16] Plaintiff makes part of her allegations "on information and belief," but fails to provide any facts or basis for her belief.  Compl. ¶¶ 36, 42.  Such speculative allegations cannot withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

15

28,948, 28,050-01, 28,954 (July 9, 1975).  Thus, to the extent that DHHS disclosed any information about Plaintiff to its own employees who had a need to know, DHHS has not violated the Privacy Act.  *See Ivey v. Snow*, 2007 WL 2474480 (D.C.C. 2005) (records shared among IRS employees in the course of receiving, processing, investigating or litigating employment claims found proper under 5 U.S.C. § 552a(b)(1); *Howard v. Marsh*, 785 F.2d 645, 647-49 (8th Cir. 1986) (disclosure of employee's personnel records to agency attorney and personnel specialist for purposes of preparing response to discrimination complaint found to be proper under § 552a(b)(1) of the Privacy Act); *Hernandez v. Alexander*, 671 F.2d 402, 410 (10th Cir. 1982) (disclosure of employee's EEO files to personnel advisors for purpose of determining whether personnel action should be taken against employee found to be proper under 5 U.S.C. § 552a(b)(1)).

Plaintiff's allegations concerning DHHS' filing a copy of her contract termination letter as an exhibit in an EEOC proceeding are also without merit.  Compl. ¶¶ 23-28.  This disclosure of Plaintiff's termination letter in the context of an EEOC hearing was statutorily prescribed.  Federal agencies are permitted routine use exceptions to the Privacy Act if compatible with the purpose for which the agency collected the personal information and in accordance with a routine use the agency has published in the Federal Register.  *See* 5 U.S.C. § 552a(a)(7); 5 U.S.C. § 552a(e)(4)(D); *see also Dep't. of Airforce v. Fed. Labor Relations Auth.*, 104 F.3d 1396, 1401-02 (D.C. Cir. 1997); *Radack v. U.S. Dept. of Justice*, 402 F.Supp.2d 99 (D.D.C. 2005).

The Federal Register contains an extensive section defining the routine uses of records maintained by the OPM and NIH, including categories of users and the purpose of such uses.  One such routine use of records provided by the OPM system of records notice is for purposes of

litigation.  *See Ivey v. Snow*, 2007 WL 2474480 (D.D.C. 2005); *Benham v. Rice*, 2005 WL

691871 (D.D.C. 2005); *Russell v. United States General Servs. Admin*., 935 F.Supp. 1142, 1146

(D. Colo. 1996) (upholding disclosure under routine use for litigation purposes).

The OPM system, referenced as OPM/GOVT-1, specifically provides that records may be

used in a proceeding before a court, adjudicative body, or other administrative body when the

agency determines that litigation is likely to affect the agency or any of its components, is a party

to litigation or has an interest in such litigation, and the use of such records by the agency is

relevant and necessary to the litigation, provided the disclosure is compatible with the purpose

for which the records were collected.  71 Fed. Reg. 35342, 35344 (June 19, 2006).  Likewise, the

NIH system of records notice provides that disclosures may be made to the U.S. Department of

Justice, or to a court or other adjudicative body when DHHS determines that the proceeding is

likely to affect DHHS or any of its components, is a party to the proceeding or has any interest in

the proceeding, and DHHS determines the records are relevant and necessary to the proceeding.

67 Fed. Reg. 60742, 60751-52 (Sept. 26, 2002) (System Number 09-25-0036, which includes

contractor information).  Thus, under the above-referenced exceptions, the disclosure of

Plaintiff's termination letter by DHHS in an EEOC proceeding was lawful.

Plaintiff has failed to provide any facts to support her allegations that DHHS intentionally

and willfully violated the Privacy Act.  *See* 5 U.S.C. § 552a(g)(4).  She must establish that the

agency acted in a manner beyond gross negligence.  S*ee Deters v. United States Parole Comm'n*.,

85 F.3d 655, 660 (D.C. Cir. 1996); *Tijerina v. Walters*, 281 F.2d 789, 799 (D.C. Cir. 1987).

Indeed, "the violation must be so patently egregious and unlawful that anyone undertaking the

conduct should have known it unlawful."  *Laningham v. United States Navy*, 813 F.2d 1236,

17

1242 (D.C. Cir. 1987) (internal quotation marks omitted).  Yet, Plaintiff's complaint is devoid of even a hint of impropriety by the agency and contains only speculative and conclusory claims.

Beyond speculation, there is nothing in the complaint to suggest that Plaintiff suffered an adverse affect from any disclosures by DHHS.  In order to establish a claim for damages under the Privacy Act, Plaintiff must show a causal connection between the alleged agency violation and the harm she suffered.  *Thompson v. Department of State*, 400 F. Supp.2d 1, 13 (D.D.C. 2005); *Deters v. United States Parole Comm'n.*, 85 F.3d at 660.  Instead, Plaintiff simply alleges, without any supporting facts, that she suffered economic and non-economic damages.  Compl. ¶ 45.  Accordingly, Plaintiff's claims for monetary damages should be dismissed.

### D.  PLAINTIFF HAS FAILED TO ALLEGE ANY IMPROPER WITHHOLDING OF AGENCY RECORDS UNDER THE FOIA

The FOIA confers jurisdiction upon the Court to provide relief to a plaintiff only where requested documents have been "improperly withheld" by an agency.  5 U.S.C. § 552(a)(4)(B). The courts have interpreted this section of the statute to mean that jurisdiction exists only upon a showing by the plaintiff that the defendant (1) improperly (2) withheld (3) agency records.  *See Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150 (1980).  Indeed, "[t]he plaintiff must show that the agency 'contravened all three components of this obligation' in order for jurisdiction to be valid."  *Kuffel v. U.S. Bureau of Prisons*, 882 F. Supp. 1116, 1120 (D.D.C. 1995) (*citing Kissinger*, 445 U.S. at 151.)  Absent such a showing, FOIA confers no "judicial authority to devise remedies and enjoin agencies."  *Id.*

In this case, other than citing to the statute, Plaintiff's complaint contains no factual allegations which suggests an improper withholding of records by DHHS under the FOIA.  *See*

18

Compl. at 2 (unnumbered paragraph). Accordingly, any alleged FOIA claims should be dismissed.

<u>**Conclusion**</u>

For the foregoing reasons, Plaintiff's complaint should be dismissed.

Respectfully submitted,

_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_/s/_____
JUDITH A. KIDWELL
Assistant United States Attorney
555 Fourth Street, N.W.- Civil Division
Room E4905
Washington, D.C. 20530
(202) 514-7250


Of Counsel:

Amy Weiser, Esq.
Office of the General Counsel
U.S. Department of Health and Human Services

19

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **EDAR ROGLER,** | ) |
| | ) |
|            **Plaintiff *pro se*,** | ) |
| | ) |
|     **v.** | )     **Civil Action No. 08-0570 (RMC)** |
| | ) |
| **U.S. DEPARTMENT OF HEALTH AND** | ) |
| **HUMAN SERVICES, *et al.*,** | ) |
| | ) |
|         **Defendants.** | ) |
| | ) |

## <u>ORDER</u>

UPON CONSIDERATION OF Defendants' Motion to Dismiss, or in the Alternative,

Motion for Summary Judgment, any Opposition thereto, and the entire record herein, it is this

_____ day of August, 2008,

    **ORDERED** that Defendants' motion is **GRANTED**; and it is

    **FURTHER ORDERED** that Plaintiff's complaint is dismissed.

 

                           _____
                           UNITED STATES DISTRICT JUDGE

Copies to:

Counsel by ECF

Edar Rogler, Plaintiff *pro se*
915 Boucher Avenue
Annapolis, Maryland  21403

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that copies of the foregoing Motion to Dismiss or Alternatively,

Motion for Summary Judgment, Statement of Material Facts To Which There Is No Genuine

Issue and proposed Order were mailed, postage pre-paid, to Plaintiff *pro se*, on this 11th day of

August 2008, to the following address:


Edar Rogler
915 Boucher Avenue
Annapolis, Maryland 21403


                                        _____/s/_____
                                        JUDITH A. KIDWELL
                                        Assistant U.S. Attorney

EXHIBIT D

Westlaw.

126 F.R.D. 509
126 F.R.D. 509
(Cite as: 126 F.R.D. 509)

Page 1

**H**
Rogler v. Phillips Bldg. Mental Retardation Program
D.Md.,1989.

United States District Court,D. Maryland.
Edar Y. ROGLER
v.
PHILLIPS BUILDING MENTAL RETARDA-
TION PROGRAM, et al.
Civ. No. K-85-2968.

June 14, 1989.

Plaintiff brought employment discrimination claim against state agencies and individual supervisors. Defendants moved to dismiss, and brought various other motions. The District Court, Frank A. Kaufman, Senior District Judge, held that: (1) dismissal with prejudice because of plaintiff's failure to comply with discovery rules and orders was appropriate, and (2) prior appearance of one of defendants as expert witness in matter before trial court did not require judge to disqualify himself.

Judgment for defendants accordingly.

West Headnotes

**[1] Federal Civil Procedure 170A ⟜1383**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(C) Depositions of Parties and Others Pending Action
            170AX(C)3 Examination in General
                170Ak1383 k. Time and Place of Examination. Most Cited Cases
Scheduling deposition of plaintiff in office of attorney of opposing party was proper under Federal Rules of Civil Procedure.

**[2] Federal Civil Procedure 170A ⟜1359**

170A Federal Civil Procedure

170AX Depositions and Discovery
    170AX(C) Depositions of Parties and Others Pending Action
        170AX(C)2 Proceedings
            170Ak1355 Orders for Protection of Parties and Deponents Before Oral Examination
                170Ak1359 k. Time and Place Of, and Procedure For, Taking. Most Cited Cases
Plaintiff's objection to taking of her deposition in offices of defense attorney was untimely where she did not seek protective order from court, but instead attended deposition and objected after deposition had been conducted in part and continued. Fed.Rules Civ.Proc.Rule 26(c)(2), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A ⟜1278**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(A) In General
            170Ak1278 k. Failure to Respond; Sanctions. Most Cited Cases

**Federal Courts 170B ⟜820**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk820 k. Depositions and Discovery. Most Cited Cases
Power to impose sanctions under rule governing violations of discovery rules and orders is discretionary with trial court and its exercise will be disturbed on appeal only for abuse of discretion or for failure by trial court clearly to state its reasons for imposing particular sanction. Fed.Rules Civ.Proc.Rule 37(b), 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ⟜1278**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(A) In General
            170Ak1278 k. Failure to Respond; Sanc-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

126 F.R.D. 509
126 F.R.D. 509
**(Cite as: 126 F.R.D. 509)**

tions. Most Cited Cases
Once court determines that discovery sanctions are required, it may impose several sanctions at same time or alternative sanctions. Fed.Rules Civ.Proc.Rule 37(b), 28 U.S.C.A.

**[5] Federal Civil Procedure 170A ☞1278**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(A) In General
            170Ak1278 k. Failure to Respond; Sanctions. Most Cited Cases
Dismissal with prejudice was appropriate remedy for plaintiff's refusal to follow court orders with respect to her discovery obligations in face of prior warnings that her case might be dismissed if her noncompliance continued, particularly where plaintiff had little or no assets and imposition of fine or transfer of costs would have been ineffective; moreover, effect of plaintiff's noncompliance upon defendants' ability to defend case and in face of plaintiff's refusal to specify certain of her claims made dismissal necessary in fairness to defendants. Fed.Rules Civ.Proc.Rule 37(b), 28 U.S.C.A.

**[6] Judges 227 ☞45**

227 Judges
    227IV Disqualification to Act
        227k45 k. Relationship to Party or Person Interested. Most Cited Cases
Court would not disqualify itself from case by reason of fact that one of defendants had appeared before it in capacity of court-appointed expert in another matter.

*510 Edar Y. Rogler, Washington, D.C., pro se.
J. Joseph Curran, Jr., Atty. Gen. of Maryland, and Carmen M. Shepard, Leronia A. Joseph and C. Frederick Ryland, Asst. Attys. Gen. of Maryland, Baltimore, Md., for all defendants other than defendants Olsson and Rappeport.
Paul F. Newhouse and Kenneth H. Meltzer, Baltimore, Md., for defendant Olsson.
Mary L. Mezzanotte, Kathleen Howard Meredith

and Semmes, Bowen & Semmes, Baltimore, Md., for defendant Rappeport.
FRANK A. KAUFMAN, Senior District Judge.
Plaintiff originally filed her complaint in this case on July 11, 1985, alleging that her employment by an agency of the State of Maryland was terminated, *inter alia,* because of her sex and in retaliation for her protests about sex and race discrimination, and the like, all in violation of Title VII and 42 U.S.C. § 1981 *et seq.* Since then plaintiff has been permitted to amend her complaint on three occasions. Defendants include agencies of, and a number of persons employed by, the State of Maryland who occupied supervisory positions with relation to plaintiff's performance of her duties. In addition, plaintiff has named as defendants two psychiatrists who diagnosed her as a paranoid personality.

Plaintiff instituted this proceeding *pro se.* However, with plaintiff's agreement, this Court attempted to aid plaintiff in obtaining counsel, and unsuccessfully recommended first one and then a second attorney. Thereafter, after this Court suggested a third attorney-one with considerable experience in employment discrimination cases in this and other courts-that attorney entered his appearance at plaintiff's request and represented her for a period of *511 nineteen months. That third attorney withdrew his appearance on February 11, 1988, with the approval of plaintiff and, reluctantly also, of this Court. Since that withdrawal, plaintiff has proceeded *pro se.*

*Discovery and Sanctions*

Over a period of several years, this Court has encouraged plaintiff and counsel for defendants to try to work together and has also, in a number of instances, ruled with respect to discovery disputes. As of this date, defendants seek the severe sanction of dismissal with prejudice, contending that plaintiff's refusal to honor her discovery obligations and to obey orders of this Court relating to discovery have brought the progress of this case to a standstill.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

126 F.R.D. 509
126 F.R.D. 509
**(Cite as: 126 F.R.D. 509)**

The record discloses that plaintiff has almost continuously been in default in connection with the performance of her discovery duties and has refused to obey orders of this Court relating to discovery. On several occasions, this Court has specifically warned plaintiff in written Memoranda and Orders of the possible imposition of the sanction of dismissal. In certain of those Memoranda and Orders, this Court has also directed plaintiff to cease filing needless, repetitive arguments and statements criticizing and impugning this Court and defense counsel. Unfortunately, as the record reveals, plaintiff has paid little or no attention to the discovery or other orders and directions of this Court. She has continued to file documents restating her positions and her criticisms and has either refused outright to engage in discovery in accordance with the discovery rules and orders of this Court or, when she has engaged in discovery, has rather obviously not done so in good faith. For example, her answers to questions put to her during deposition proceedings are either ambiguous, evasive or nonresponsive, or constitute outright refusals to respond to appropriate questions. Defendants have, over a long period of time, asked plaintiff to clarify whether she is alleging against the two defendant psychiatrists or other defendants claims of improper procedural diagnosis of paranoia, or improper substantive diagnosis of paranoia, or both. On December 21, 1988, this Court filed an Order providing that "defendants may seek discovery with respect to Ms. Rogler's psychiatric history unless Ms. Rogler states, on or before January 13, 1989, in a written submission to this court that she is not challenging the correctness of the diagnoses of defendants Rappeport and Olsson." [FN1] Plaintiff did not file such a written submission with this Court by January 13, 1989 or at any time thereafter. On February 3, 1989, defendants noticed the continuation of plaintiff's deposition for February 22, 1989. Plaintiff neither attended that deposition proceeding nor obtained any order excusing her from being present. Consequently, defendants filed a motion for sanctions pursuant to Federal Civil Rule 37 on February 24, 1989 seeking, alternatively, an order

(a) dismissing this action with prejudice or (b) prohibiting plaintiff from asserting certain claims or defenses or (c) barring the introduction of certain evidence. This Court, without specifically ruling with regard to that motion, instead ordered plaintiff to appear for her deposition at a time satisfactory to defendants and to fulfill all of her discovery obligations.[FN2]

> FN1. Memorandum and Order of this Court dated December 21, 1988 at 29-30. Ms. Rogler noted an appeal on January 13, 1989 from this Court's Order that plaintiff provide discovery regarding her medical and psychiatric history. That appeal is still pending.
>
> All Memoranda and Orders of this Court, and indeed all communications with plaintiff and counsel for the parties, have been placed in the court file in this case.
>
> FN2. Memorandum and Order of this Court dated March 16, 1989.

On or about March 11, 1989, plaintiff noted "the cross-examination of [plaintiff's] deposition" for April 3, 1989. This Court, on March 16, 1989, ordered plaintiff to appear for her deposition and defendants again noticed plaintiff's deposition for April 3, 1989. On March 21, 1989, counsel for defendant Olsson received a telephone call from plaintiff in which plaintiff insisted that her "cross-examination" precede defendants' examination of her. During that *512 call, plaintiff informed counsel that she would not attend her deposition on April 3, 1989. Defendants then sought, and this Court issued on March 29, 1989, an Order that defendants' examination of plaintiff precede her "cross-examination." Defendants noticed the deposition for April 3, 1989 at 10:00 a.m. Plaintiff appeared on April 3, 1989 at 11:19 a.m., [FN3] but proceeded, when asked questions, to restate a number of the objections which she had previously made and also refused to provide responsive answers to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

126 F.R.D. 509
126 F.R.D. 509
(Cite as: 126 F.R.D. 509)

Page 4

most of the questions put to her by counsel for defendants. The record of the April 3, 1989 proceeding reveals plaintiff's refusal to participate on a good faith basis. No one with plaintiff's experience and education could have acted as she did during that proceeding without a specific intent to stonewall. In addition, plaintiff sought after a short time to terminate the deposition. Apparently, after plaintiff was informed by one or more of counsel for defendants that plaintiff needed a protective order from this Court pursuant to Federal Civil Rule 30(d) in order to terminate, plaintiff forthwith filed a motion with this Court to obtain such an order. Judge Ramsey of this Court, who was serving as Chambers Judge that day, denied plaintiff's motion and ordered the deposition to continue. During the continued deposition, plaintiff refused to answer any questions concerning her psychiatric history and medical treatment. At 5:32 p.m. on April 3, 1989, the deposition proceeding adjourned with the understanding between plaintiff and counsel for defendants that it would be continued on April 7, 1989 at 10:00 a.m. Plaintiff did not appear on April 7, 1989; rather, she filed another motion to terminate pursuant to Federal Civil Rule 30(d) on April 6, 1989 and a further motion for other relief on May 2, 1989. Those motions which have not been ruled upon by this Court up to this time are hereby denied.[FN4]

> FN3. Plaintiff called Mr. Meltzer, counsel for defendant Olsson, at 9:00 a.m. from her home in Washington, D.C. on April 3, 1989 to inform him that because it was raining, it was possible that she would be late for her deposition. She then telephoned from the lobby of the building at 11:07 a.m. to request directions to the office where the examination was to take place.

> FN4. The parties have filed a number of pending motions, including motions to strike. All of them are rendered moot by this opinion.

[1][2] On April 17, 1989, defendants filed a motion pursuant to Federal Civil Rules 37(b) and 41(b) seeking dismissal with prejudice of plaintiff's complaint in this case as a sanction because of plaintiff's conduct. On May 2, 1989, plaintiff filed an opposition to that motion, contending, *inter alia*, that at least certain of the alleged failures on her part to appear at deposition proceedings and/or responsibly to answer questions were due to the fact that she was not given adequate notice. The record discloses that that contention is factually without merit.[FN5] Plaintiff, in her opposition, also contends that the depositions were scheduled to be held, and indeed when they took place, were held, in the law offices of one of defense counsel and that it was improper for defendants to notice and/or to hold the deposition proceedings in such locations. Plaintiff first made that objection when she filed her opposition on May 2, 1989. Accordingly, that contention is untimely made.[FN6] In addition, plaintiff's contention lacks substantive merit. While "a few early cases held that [a deposition proceeding] should not be conducted in the office of an attorney for a party, ... there is authority to the contrary and it is the common practice to use the attorney's office." 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2112 at 418 (footnote omitted).

> FN5. Plaintiff's deposition commenced in March, 1988; this Court ordered in December, 1988 completion of plaintiff's deposition prior to the commencement of any depositions noticed by plaintiff; and defendants noticed, on February 3, 1989, pursuant to this Court's December, 1988 order, the continuance of plaintiff's deposition for February 22, 1989.

> FN6. If plaintiff had desired timely to object to the taking of a deposition in the offices of a defense attorney, she could have sought a protective order from this Court pursuant to Federal Civil Rule 26(c)(2), asking for designation of another place.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*513** Federal Civil Rule 41(b) grants to a federal district court the authority to dismiss an action either on a motion by a defendant or *sua sponte.* 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2369 at 191. However, "Rule 41(b) does not exhaust the grounds on which involuntary dismissal can be ordered." *Id.* at 192. Thus, for example, Rule 37 permits "[d]ismissal as a sanction to enforce the discovery rules.... Indeed reliance on Rule 41, or on the court's inherent power, as authority for dismissal for failure to comply with a discovery order is improper, since Rule 37 is the exclusive source of authority for dismissal on this ground." *Id.* at 193.

In this case, plaintiff's refusal to follow this Court's instructions with respect to her discovery obligations has occurred in the face of specific warnings by this Court and has taken place in the most blatant manner. While the record illustrates that Ms. Rogler's conduct has been generally lamentable, it is her discovery failures which have become egregiously disruptive. Thus, it is principally under Rule 37(b), rather than under Rule 41(b), that this Court focuses with respect to the issue of whether dismissal with prejudice is an appropriate sanction. In so focusing, however, this Court notes that the case law with respect to sanctions generally and with specific reference to the sanction of dismissal has arisen not only in connection with Rule 37(b), but also in the context of Rule 41(b) and other contexts, and that the opinions dealing with that question in those several circumstances are all quite instructive to a court faced with a sanction motion filed pursuant to Rule 37(b).

In *Davis v. Williams,* 588 F.2d 69, 70 (4th Cir.1978), a case in which a prisoner contended that he was denied adequate medical treatment, the Fourth Circuit affirmed the District Court's dismissal pursuant to Rule 41(b) because of plaintiff's failure to prosecute and failure to accept proffered medical treatment. Judge Butzner wrote that such conduct "and other obstructive conduct on Davis's part distinguishes this case from our decisions set-

ting aside dismissals on which Davis relies." *Id.* Judge Butzner also wrote:

A dismissal with prejudice is a harsh sanction which should not be invoked lightly in view of "the sound public policy of deciding cases on their merits." *Reizakis v. Loy,* 490 F.2d 1132, 1135 (4th Cir.1974); 9 Wright & Miller, Federal Practice and Procedure § 2370, at 216-17. Against this policy, the district court must balance considerations of sound judicial administration, applying four criteria: (1) the degree of personal responsibility on the part of the plaintiff; (2) the amount of prejudice to the defendant caused by the delay; (3) the presence or absence of a " 'drawn out history' of 'deliberately proceeding in a dilatory fashion;' " and (4) the effectiveness of sanctions less drastic than dismissal. *McCargo v. Hedrick,* 545 F.2d 393, 396 (4th Cir.1976).

*Id.*

[3] The case law generally supports Judge Butzner's reluctance to countenance the use of the drastic sanction of dismissal with prejudice for failure to obey discovery orders of a federal district court. Accordingly, courts have often allowed parties more than one chance to comply with discovery orders and discovery rules. *See, e.g., Wilson v. Volkswagen of America, Inc.,* 561 F.2d 494 (4th Cir.1977) (Russell, J.), *cert. denied,* 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978); *Culp v. Devlin,* 78 F.R.D. 136, 141 (E.D.Pa.1978); *CTS Corp. v. Piher Int'l Corp.,* 59 F.R.D. 394, 395 (N.D.Ill.1973). Courts generally apply sanctions only to the extent that the same are reasonably necessary to accomplish the purpose of encouraging compliance with discovery orders "rather than simply ... punish[ing] for failure to make discovery." 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2284 at 772. Still, the power to impose sanctions under Rule 37(b) is discretionary with the trial court and its exercise will be disturbed on appeal only for an abuse of discretion, *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

126 F.R.D. 509
126 F.R.D. 509
**(Cite as: 126 F.R.D. 509)**

Page 6

2778, 2780, 49 L.Ed.2d 747 (1976), or for failure by the trial court clearly to state *514 its reasons for imposing a particular sanction. *Wilson v. Volkswagen of America, Inc.,* 561 F.2d at 505.

[4] Once a court determines that sanctions are required, the court must choose which sanctions to employ and, in a given instance, can impose several sanctions at the same time or alternative sanctions. *R. De Bouard & Cie. v. S.S. Ionic Coast,* 46 F.R.D. 1, 3 (S.D.Tex.1969); *Life Music, Inc. v. Broadcast Music, Inc.,* 41 F.R.D. 16 (S.D.N.Y.1966).

[5] In this case, plaintiff is primarily responsible for conduct which has made a mockery of discovery and has disrupted progress in this case. Also, plaintiff has stated that she has little or no assets. Accordingly, imposition of a fine or transfer of costs would hardly be effective. As indicated *supra,* this Court has, on numerous occasions, attempted to explain to plaintiff her discovery obligations and has warned her that if she persisted in her course of conduct, her complaint might be dismissed. The sanction of dismissal with prejudice would appear to be the only sanction available under the circumstances. In this Court's view, that sanction should be imposed in this case "not merely to penalize ... [a person such as Ms. Rogler] whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. at 643, 96 S.Ct. at 2781. Moreover, in this case, the "needs" of the defendants, the "nature of the noncompliance" by plaintiff, and the effect upon defendants' ability to defend in this case in the absence of the discovery from plaintiff sought by them and in the face of plaintiff's refusal to specify certain of her claims, make it necessary, in fairness to defendants, that this Court at this time grant their motion to dismiss plaintiff's complaint with prejudice. *See Wilson v. Volkswagen of America, Inc.,* 561 F.2d at 505. *See also Truck Treads, Inc. v. Armstrong Rubber Co.,* 818 F.2d 427 (5th Cir.1987); *Bluitt v. Arco Chemical Co.,* 777 F.2d

188 (5th Cir.1985); *Kabbe v. Rotan Mosle, Inc.,* 752 F.2d 1083 (5th Cir.1985); *Hindmon v. National Ben-Franklin Life Ins. Corp.,* 677 F.2d 617 (7th Cir.1982), and cases cited therein; *Snead v. Automation Industries, Inc.,* 102 F.R.D. 823 (D.Md.1984); *Aerodyne Systems Engineering, Ltd. v. Heritage Int'l Bank,* 115 F.R.D. 281 (D.Md.1987). In many of those cases, dismissals have been entered as sanctions in contexts far less egregious than those existing in this case. Accordingly, defendants' motion for dismissal with prejudice will be granted and judgment will be entered for defendants.

*Disqualification*

[6] On March 7, 1988, plaintiff noted an appeal from this Court's February 19, 1988 order staying discovery relating to this Court's alleged bias in favor of one of the defendant psychiatrists pending determination of the legal issue of whether a judge should disqualify himself when one of the parties, i.e., in this case, that psychiatrist, has appeared before the Court in the capacity of a court-appointed expert. On November 2, 1988, that appeal by plaintiff was dismissed by the Fourth Circuit for lack of appellate jurisdiction. After further consideration of the issue, this Court continues to be of the view that there is no "reason, in fact or in terms of appearance, which should cause the undersigned judge of this Court to disqualify himself in this case" [FN7] and that no discovery is required in *515 order for this Court appropriately to rule with regard to the disqualification issue. Accordingly, this Court declines to disqualify itself in this case.

> FN7. Memorandum and Order dated March 10, 1988. *See particularly* paragraph (4) thereof which reads as follows (footnote omitted):
>
> (4) The undersigned judge of this Court has called upon Dr. Rappeport to render written expert opinions to this Court in criminal cases, largely in a sentencing

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

context. Also, the undersigned judge of this Court believes that he has in one case, sometime ago, presided during a judicial proceeding in which Dr. Rappeport testified as an expert. In the view of this Court, those circumstances in no way should cause "a reasonable member of the public at large, aware of all the facts, [to] fairly question the Court's impartiality." *United States v. Ferguson*, 550 F.Supp. 1256, 1260 (S.D.N.Y.1982) (Weinfeld, J.). *See SCA Services, Inc. v. Morgan*, 557 F.2d 110 (7th Cir.1977); *see also* L. Abramson, *Judicial Disqualification under Canon 3C of the Code of Judicial Conduct* 52-53 (American Judicature Society 1986). A copy of that monograph has been placed in the court file in this case along with a letter dated March 7, 1988 to the undersigned judge of this Court from Professor Shaman of The Center for Judicial Conduct Organizations, a service of the American Judicature Society. Professor Shaman made the said monograph available to the undersigned judge of this Court as a result of a telephone call from this Court to the American Judicature Society asking for any publications or other materials which the Center might have concerning whether a judge should disqualify himself in a case in which a defendant before him has appeared or rendered services as an expert in one or more other cases totally unconnected with the case at bar.

Under all the circumstances, this Court does not believe that there is any reason, in fact or in terms of appearance, which should cause the undersigned judge of this Court to disqualify himself in this case.

*See also Sierra Club v. Simkins Indus-*

*tries, Inc.,* 847 F.2d 1109, 1116 (4th Cir.1988) (prior association as attorney before becoming a judge); *Rice v. McKenzie,* 581 F.2d 1114 (4th Cir.1978) (prior participation as state court judge with regard to same claims); *Piechowicz v. United States,* 685 F.Supp. 486, 488 n. 1 (D.Md.1988) (prior appearances of a defendant as an attorney).

*Conclusion*

For the reasons set forth *supra,* judgment will be entered for defendants in a separate order.

ORDER

For the reasons stated by this Court in an opinion filed today, defendants' motion for dismissal with prejudice is hereby granted, and judgment is hereby entered for defendants. It is so ORDERED, this 14th day of June, 1989.

D.Md.,1989.
Rogler v. Phillips Bldg. Mental Retardation Program
126 F.R.D. 509

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw Delivery Summary Report for KIDWELL,JUDITH 1792374**

| | |
|---|---|
| Date/Time of Request: | Thursday, May 15, 2008 10:59 Central |
| Client Identifier: | DOJ |
| Database: | FRDFIND |
| Citation Text: | 126 F.R.D. 509 |
| Lines: | 414 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

Westlaw.

898 F.2d 147                                                              Page 1
898 F.2d 147, 1990 WL 27184 (C.A.4 (Md.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**898 F.2d 147, (C.A.4 (Md.))1990 WL 27184**

**H**
**Rogler v. Phillips Bldg. Mental Retardation Pro-**
**gram**
C.A.4 (Md.),1990.
NOTICE: THIS IS AN UNPUBLISHED OPIN-
ION.(The Court's decision is referenced in a "Table
of Decisions Without Reported Opinions" appear-
ing in the Federal Reporter. Use FI CTA4 Rule 36
for rules regarding the citation of unpublished opin-
ions.)
      United States Court of Appeals, Fourth Circuit.
         **Edar** Y. **ROGLER**, Plaintiff-Appellant,
                            v.
   PHILLIPS BUILDING MENTAL RETARDA-
   TION PROGRAM; Crownsville Hospital Center;
   Loretta Stokes, individually and in her official ca-
   pacity as Personnel Administrator; Ted Bunck, in-
   dividually and in his official capacity as Psycholo-
   gist at the Phillips Building; Robert Jacobs; Depart-
   ment of Health and Mental Hygiene: Department of
   Personnel; Dennis Powers, individually and in his
   official capacity as Director of the Phillips Building
   Mental Retardation Program; Marvin Malcotti, in-
   dividually and in his official capacity as Adminis-
   trator, Mental Retardation Developmental Disabil-
   ity Administration; William Clark, individually and
   in his former official capacity as Manager, Employ-
   er-Employee Relations Department of Health and
   Mental Hygiene; Dennis K. Dobson, individually
   and in his official capacity as Personnel Adminis-
   trator Crownsville Hospital Center; Constance Hol-
   loway, individually and in her official capacity Hu-
   man Development Associate III; William McNeal,
   individually and in his official capacity as Person-
   nel Officer, Crownsville Hospital Center; Peter
   Oroszlan, individually and in his official capacity
   as State Medical Examiner; Jonas Rappeport, M.D.,
   individually; James E. Olsson, M.D., individually,
                   Defendants-Appellees.
                       **No. 89-2151.**

                 Submitted: Dec. 29, 1989.
                 Decided: Feb. 20, 1990.

Appeal from the United States District Court for the
District of Maryland, at Baltimore. Frank A. Kauf-
man, Senior District Judge. (C/A No. 85-2968-K)

**Edar** Y. **Rogler**, appellant pro se.
Carmen Mercedes Shepard, Office of the Attorney
General of Maryland, for appellees.
D.Md., 126 F.R.D. 509.

AFFIRMED.

Before SPROUSE and CHAPMAN, Circuit Judges,
and BUTZNER, Senior Circuit Judge.

PER CURIAM:
* **Edar** Y. **Rogler** appeals from the district court's
order denying relief in her employment discrimina-
tion action filed under Title VII and 42 U.S.C. §§
1981 and 1983. We have granted appellant's motion
for enlargement of time and have considered her
supplemental briefs. Appellees' motion to dismiss
the appeal is denied.

Our review of the record and the district court's
opinion discloses that this appeal is without merit.
Accordingly, we affirm on the reasoning of the dis-
trict court. *Rogler v. Phillips Bldg. Mental Retard-*
*ation Program*, CA-85-2968-K (D.Md. June 15,
1989). We dispense with oral argument because the
facts and legal contentions are adequately presented
in the materials before the court and argument
would not aid the decisional process.

*AFFIRMED.*

C.A.4 (Md.),1990.
Rogler v. Phillips Bldg. Mental Retardation Pro-
gram
898 F.2d 147, 1990 WL 27184 (C.A.4 (Md.))

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

862 F.2d 314                                                          Page 1
862 F.2d 314, 1988 WL 119151 (C.A.4 (Md.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**862 F.2d 314, (C.A.4 (Md.))1988 WL 119151**

**H**
**Rogler** v. Department of Health and Mental Hy-
giene
C.A.4 (Md.),1988.
NOTICE: THIS IS AN UNPUBLISHED OPIN-
ION.(The Court's decision is referenced in a "Table
of Decisions Without Reported Opinions" appear-
ing in the Federal Reporter. Use FI CTA4 Rule 36
for rules regarding the citation of unpublished opin-
ions.)
United States Court of Appeals, Fourth Circuit.
**Edar Y. ROGLER**, Plaintiff-Appellant,
v.
DEPARTMENT OF HEALTH AND MENTAL
HYGIENE, Department of Personnel, Dennis
Powers, individually and in his official capacity as
Director of the Phillips Building Mental Retarda-
tion Program, Marvin Malcotti, individually and in
his official capacity as Administrator, Mental Re-
tardation Developmental Disability Administration,
William Clark, individually and in his former offi-
cial capacity as Manager, Employer-Employee Re-
lations Department of Health and Mental Hygiene,
Dennis K. Dobson, individually and in his official
capacity as Personnel Administrator Crownsville
Hospital Center, Constance Holloway, individually
and in her official capacity Human Development
Associate III, William McNeal, individually and in
his official capacity as Personnel Officer, Crowns-
ville Hospital Center, Peter Oroszlan, M.D., indi-
vidually and in his official capacity as State Medic-
al Examiner, Jonas Rappeport, M.D., individually,
James E. Olsson, M.D., individually, Defendants-
Appellees,
andPhillips Building Mental Retardation Program,
Crownsville Hospital Center, Loretta Stokes, indi-
vidually and in her official capacity as Personnel
Administrator, Ted Bunck, individually and in his
official capacity as Psychologist at the Phillips
Building, Robert Jacobs, Defendants.
No. 88-1039.

Submitted May 27, 1988.

Decided Oct. 31, 1988.

D.Md.

DISMISSED.

Appeal from the United States District Court for the
District of Maryland, at Baltimore. Frank A. Kauf-
man, Senior District Judge. (C/A No. 85-2968-K).

Before SPROUSE and CHAPMAN, Circuit Judges,
and BUTZNER, Senior Circuit Judge.

**Edar Y. Rogler**, appellant pro se.
John Joseph Curran, Jr., Attorney General, for ap-
pellees.
PER CURIAM:
**\* Edar Y. Rogler** appeals the district court's order
staying discovery in her civil rights action. We dis-
miss the appeal for lack of jurisdiction.

Under 28 U.S.C. § 1291 this Court has jurisdiction
over appeals from final orders. A final order is one
which disposes of all issues in dispute as to all
parties. It "ends the litigation on the merits and
leaves nothing for the court to do but execute the
judgment." *Catlin v. United States,* 324 U.S. 229,
233 (1945).

As the order appealed from is not a final order, it is
not appealable under 28 U.S.C. § 1291. The district
court has not directed entry of final judgment as to
particular claims or parties under Fed.R.Civ.P.
54(b), nor is the order appealable under the provi-
sions of 28 U.S.C. § 1292. Finally, the order is not
appealable as a collateral order under *Cohen v. Be-
neficial Industrial Loan Corp.,* 337 U.S. 541 (1949).

Finding no basis for appellate jurisdiction, we dis-
miss the appeal as interlocutory. We dispense with
oral argument because the facts and legal argu-
ments are adequately presented in the materials be-
fore the Court and oral argument would not signi-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

862 F.2d 314
862 F.2d 314, 1988 WL 119151 (C.A.4 (Md.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**862 F.2d 314, (C.A.4 (Md.))1988 WL 119151**

ficantly aid the decisional process.

*DISMISSED.*

C.A.4 (Md.),1988.
Rogler v. Department of Health and Mental Hygiene
862 F.2d 314, 1988 WL 119151 (C.A.4 (Md.))

**END OF DOCUMENT**

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT E



30 Fed.Appx. 909
30 Fed.Appx. 909, 2002 WL 307731 (C.A.10 (Kan.))
(Not Selected for publication in the Federal Reporter)
**30 Fed.Appx. 909, (C.A.10 (Kan.))2002 WL 307731**

Page 1

**C**
Rogler v. Standard Ins. Co.
C.A.10 (Kan.),2002.
This case was not selected for publication in the
Federal Reporter.Not for Publication in West's Fed-
eral Reporter See Fed. Rule of Appellate Procedure
32.1 generally governing citation of judicial de-
cisions issued on or after Jan. 1, 2007. See also
Tenth Circuit Rule 32.1. (Find CTA10 Rule 32.1)
United States Court of Appeals,Tenth Circuit.
**Edar Y. ROGLER**, Plaintiff-Appellant,
v.
STANDARD INSURANCE COMPANY, Defend-
ant-Appellee.
**No. 01-3157.**

Feb. 28, 2002.

In her first amended complaint, Ms. **Rogler**
claimed that Standard wrongfully terminated her
benefits and she asserted claims for breach of con-
tract, attorney's fees, and interest. In its answer to
the first amended complaint, Standard denied it
wrongfully terminated Ms. **Rogler's** benefits, and it
asserted a number of affirmative defenses, includ-
ing the defense that Ms. **Rogler's**"application for
the Policy contain[ed] material misstatements that
would provide the basis to void the Policy and/or to
deny plaintiff's claim for benefits."Plaintiff **Edar
Y. Rogler** is appealing, inter alia, the order entered
by the district court granting defendant Standard In-
surance Company's (Standard) motion to enforce
settlement agreement and denying her motions for
sanctions against Standard and its counsel. We af-
firm. BOBBY R. BALDOCK, Circuit Judge.

Affirmed.

West Headnotes

**[1] Compromise and Settlement 89 ⊂⇒21**

89 Compromise and Settlement
　89I In General
　　89k21 k. Enforcement. Most Cited Cases

Trial court has the power to summarily enforce a
settlement agreement entered into by the litigants
while the litigation is pending before it.

**[2] Federal Courts 170B ⊂⇒813**

170B Federal Courts
　170BVIII Courts of Appeals
　　170BVIII(K) Scope, Standards, and Extent
　　　170BVIII(K)4 Discretion of Lower Court
　　　　170Bk813 k. Allowance of Remedy
and Matters of Procedure in General. Most Cited
Cases
Court of Appeals reviews federal district court's or-
der enforcing the settlement agreement for an abuse
of discretion.

**[3] Federal Courts 170B ⊂⇒412.1**

170B Federal Courts
　170BVI State Laws as Rules of Decision
　　170BVI(C) Application to Particular Matters
　　　170Bk412 Contracts; Sales
　　　　170Bk412.1 k. In General. Most Cited
Cases
Issues involving enforceability of settlement agree-
ment are resolved by applying state law.

**[4] Compromise and Settlement 89 ⊂⇒18(1)**

89 Compromise and Settlement
　89I In General
　　89k18 Modification or Rescission by Parties
　　　89k18(1) k. In General. Most Cited Cases
Under Kansas law, in the absence of bad faith or
fraud, when parties enter into an agreement settling
and adjusting a dispute, neither party is permitted to
repudiate it.

**[5] Release 331 ⊂⇒16**

331 Release
　331I Requisites and Validity
　　331k16 k. Mistake. Most Cited Cases
Under Kansas law, mere mistake of fact on the part

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

30 Fed.Appx. 909
30 Fed.Appx. 909, 2002 WL 307731 (C.A.10 (Kan.))
**(Not Selected for publication in the Federal Reporter)**
**30 Fed.Appx. 909, (C.A.10 (Kan.))2002 WL 307731**

Page 2

of one of the parties to a release, in the absence of fraud, duress, undue influence, or mental incapacity, is not sufficient ground for the avoidance of a release.

**[6] Insurance 217 ☞3383**

217 Insurance
　217XXVII Claims and Settlement Practices
　　217XXVII(D) Requisites and Validity of Settlement or Release
　　　217k3383 k. In General. Most Cited Cases
Under Kansas law, disability insurer's alleged prelitigation conduct, including threatening to release insured's medical records to the public and acting in bad faith in terminating disability insurance benefits, could not form the basis of post-settlement claims brought by insured to attack her settlement agreement with insurer, where the alleged prelitigation conduct was what formed the basis of insured's substantive claims against insurer that were then settled.

**[7] Insurance 217 ☞3383**

217 Insurance
　217XXVII Claims and Settlement Practices
　　217XXVII(D) Requisites and Validity of Settlement or Release
　　　217k3383 k. In General. Most Cited Cases
Under Kansas law, federal district court did not abuse its discretion in enforcing settlement agreement between disability insurer and insured, where insured understood terms of agreement at time she entered into it, she accepted benefits of the agreement by negotiating her settlement check, and she provided no evidence that insurer ever threatened to publicly release her medical records after she filed litigation.

**[8] Federal Courts 170B ☞813**

170B Federal Courts
　170BVIII Courts of Appeals
　　170BVIII(K) Scope, Standards, and Extent
　　　170BVIII(K)4 Discretion of Lower Court

　　　170Bk813 k. Allowance of Remedy and Matters of Procedure in General. Most Cited Cases
Court of Appeals reviews federal district court's decision not to impose sanctions pursuant to its inherent power for an abuse of discretion.

**[9] Federal Civil Procedure 170A ☞2737.3**

170A Federal Civil Procedure
　170AXIX Fees and Costs
　　170Ak2737 Attorneys' Fees
　　　170Ak2737.3 k. Bad Faith, Vexatiousness, Etc. Most Cited Cases

**Federal Civil Procedure 170A ☞2757**

170A Federal Civil Procedure
　170AXX Sanctions
　　170AXX(A) In General
　　　170Ak2756 Authority to Impose
　　　　170Ak2757 k. Inherent Authority. Most Cited Cases
Federal district court has the inherent power to assess attorney fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons; however, this power only extends to bad faith conduct in litigation.

**[10] Federal Civil Procedure 170A ☞2795**

170A Federal Civil Procedure
　170AXX Sanctions
　　170AXX(B) Grounds for Imposition
　　　170Ak2795 k. Other Particular Conduct. Most Cited Cases
Federal district court did not abuse its discretion in denying insured's motion requesting imposition of sanctions pursuant to court's inherent power where record did not support insured's claim that disability insurer and insurer's agent acted in bad faith or otherwise improperly during the course of the litigation before federal district court.

**[11] Federal Courts 170B ☞813**

170B Federal Courts

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

30 Fed.Appx. 909
30 Fed.Appx. 909, 2002 WL 307731 (C.A.10 (Kan.))
**(Not Selected for publication in the Federal Reporter)**
**30 Fed.Appx. 909, (C.A.10 (Kan.))2002 WL 307731**

170BVIII Courts of Appeals
170BVIII(K) Scope, Standards, and Extent
170BVIII(K)4 Discretion of Lower Court
170Bk813 k. Allowance of Remedy and Matters of Procedure in General. Most Cited Cases
Court of Appeals reviews federal district court's decision not to impose sanctions under Rule 11 for an abuse of discretion. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

**[12] Federal Civil Procedure 170A ⟐2760**

170A Federal Civil Procedure
170AXX Sanctions
170AXX(A) In General
170Ak2759 Papers or Conduct Which May Be Subject of Sanctions
170Ak2760 k. Necessity of Paper, Signature or Filing. Most Cited Cases
Rule 11 only applies to the presentation of pleadings, written motions, or other papers to the court. Fed.Rules Civ.Proc.Rule 11(b), 28 U.S.C.A.

**\*910** Before MURPHY, McKAY, and BALDOCK, Circuit Judges.

ORDER AND JUDGMENT [FN*]

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir.R. 36.3.BALDOCK, Circuit Judge.
**\*\*1** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially**\*911** assist the determination of this appeal. SeeFed.R.App.P. 34(a)(2); 10th Cir.R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff **Edar Y. Rogler** is appealing, *inter alia,* the order entered by the district court granting defendant Standard Insurance Company's (Standard) motion to enforce settlement agreement and denying her motions for sanctions against Standard and its counsel. We affirm.

I.

Standard issued a disability insurance policy to Ms. Rogler in 1993. At the time, Ms. Rogler was working as an attorney in California. In October 1994, Ms. Rogler submitted a claim for disability benefits to Standard, and Standard accepted the claim and began paying benefits to her in February 1995. In July 1997, Standard closed Ms. Rogler's claim and terminated benefits. According to Standard's termination letter, it terminated benefits because: (1) Ms. Rogler failed to execute proper authorization forms for the release of medical records so that Standard could continue to evaluate whether she was disabled; and (2) at the request of Standard, Ms. Rogler underwent a neuropsychological evaluation in December 1996, and the doctor who performed the evaluation concluded that she was able to return to work as an attorney and that there was no reasonable basis to support a disability claim.

Standard's quality assurance unit subsequently reviewed the termination of Ms. Rogler's benefits, and it concluded that Standard made the correct decision in closing her claim. In a letter to Ms. Rogler dated December 8, 1997, Standard advised Ms. Rogler of the quality assurance review and informed her that: (1) the medical information in her file indicated that she was capable of working as an attorney; and (2) her refusal to provide proper authorization forms had affected Standard's ability to properly administer her claim. Standard also informed Ms. **Rogler** that there were material omissions in her policy application concerning her past medical history, and Standard listed the prior medical conditions which Ms. **Rogler** had allegedly failed to disclose in the letter.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

30 Fed.Appx. 909
30 Fed.Appx. 909, 2002 WL 307731 (C.A.10 (Kan.))
**(Not Selected for publication in the Federal Reporter)**
**30 Fed.Appx. 909, (C.A.10 (Kan.))2002 WL 307731**

Page 4

In June 1999, Ms. **Rogler** filed suit against Standard in a Kansas state court, and Standard removed the case to the United States District Court for the District of Kansas. In her first amended complaint, Ms. **Rogler** claimed that Standard wrongfully terminated her benefits and she asserted claims for breach of contract, attorney's fees, and interest. In its answer to the first amended complaint, Standard denied it wrongfully terminated Ms. **Rogler's** benefits, and it asserted a number of affirmative defenses, including the defense that Ms. **Rogler's** "application for the Policy contain[ed] material misstatements that would provide the basis to void the Policy and/or to deny plaintiff's claim for benefits." *See* R., Doc. No. 23 at 3, ¶ 17.

**2 Ms. **Rogler** subsequently filed a motion for leave to file a second amended complaint. In her second amended complaint, Ms. **Rogler** added claims against Standard for bad faith and punitive damages, alleging that Standard engaged in a number of abusive and coercive practices in administering and terminating her benefits. The district court denied Ms. **Rogler's** motion for leave on the grounds that she unduly delayed in requesting the amendment.[FN1]

> FN1. Specifically, Ms. **Rogler** did not file her motion for leave to file her second amended complaint until one month after the deadline set by the district court for amending pleadings.

*912 The district court scheduled a settlement conference for September 1, 2000. In the confidential settlement statement he submitted to the court, counsel for Standard, Morris J. Nunn, stated that Ms. Rogler was not disabled from working as an attorney. Mr. Nunn also stated that Ms. Rogler made misrepresentations in her policy application concerning her pre-existing medical conditions. In support of Standard's settlement statement, Mr. Nunn submitted the letter from Standard to Ms. Rogler dated December 8, 1997, which is referred to above.

Ms. **Rogler** and Standard agreed to a settlement at the settlement conference. However, Ms. **Rogler** subsequently failed to execute the written settlement agreement which Mr. Nunn forwarded to her, and Mr. Nunn filed a motion to enforce the settlement agreement. A hearing on the motion was held before the magistrate judge on September 29, 2000. At the hearing, Ms. **Rogler** and Mr. Nunn prepared and executed a written settlement agreement. According to the terms of the agreement, the parties agreed to settle all claims relating to Ms. **Rogler's** disability policy. The parties further agreed that the policy was thereafter void, and Ms. **Rogler** released Standard from all claims relating to the policy, including all claims for past or future disability benefits. Ms. **Rogler** also agreed to sign a stipulation of dismissal with prejudice.[FN2] At the hearing on September 29, Standard submitted separate settlement checks to Ms. **Rogler** and her counsel, and both checks were subsequently negotiated.[FN3]

> FN2. The settlement agreement also contains a confidentiality provision, and Ms. **Rogler** claims that Standard and Mr. Nunn have violated the confidentiality provision by disclosing certain terms of the agreement in the proceedings before the district court and this court. We note, however, that the confidentiality provision only bars Ms. **Rogler** from disclosing the terms of the settlement agreement and Standard is not subject to such a restriction.

> FN3. Prior to the hearing on September 29, Ms. **Rogler** had instructed her attorney to withdraw from the case, and the magistrate judge entered an order on September 29 permitting her counsel to withdraw. Thereafter, Ms. **Rogler** represented herself before the district court and she has continued to proceed *pro se* on appeal.

Ms. **Rogler** subsequently refused to sign a stipulation of dismissal. After being informed of this fact, the district court ordered Ms. **Rogler** to appear at a hearing on November 20, 2000 to show cause as to

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

30 Fed.Appx. 909
30 Fed.Appx. 909, 2002 WL 307731 (C.A.10 (Kan.))
(Not Selected for publication in the Federal Reporter)
30 Fed.Appx. 909, (C.A.10 (Kan.))2002 WL 307731

Page 5

why Standard's previously-filed motion to enforce the settlement agreement should not be granted. At the hearing, Ms. **Rogler** informed the court that she was not objecting to the settlement agreement the parties executed. Nonetheless, she requested additional time to respond to Standard's motion to enforce the agreement, and the court granted her request.

Ms. **Rogler** subsequently filed numerous pleadings and declarations in the district court, and her filings clearly indicated that she was in fact seeking to void the settlement agreement. In particular, she filed a brief in opposition to Standard's motion to enforce the settlement agreement and motions for sanctions against Standard and Mr. Nunn pursuant to the inherent power of the court and Fed.R.Civ.P. 11. On April 13, 2001, the district court held an evidentiary hearing on these motions. At the conclusion of the hearing, the court granted Standard's motion to enforce the settlement agreement and denied Ms. Rogler's motions for sanctions, and the court entered an order confirming these and other rulings on April 20, 2001. Ms. Rogler is now appealing all of the rulings in the district court's April 20 order that were adverse to her. She is also appealing the \*913 district court's order denying her motion for leave to file her second amended complaint.

II.

A. Motion to Enforce Settlement Agreement

\*\*3 [1][2] "A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *United States v. Hardage,* 982 F.2d 1491, 1496 (10th Cir.1993). We review the district court's order enforcing the settlement agreement for an abuse of discretion. *See id.* at 1495.

[3][4][5] Issues involving the enforceability of a settlement agreement are resolved by applying state law. *See United States v. McCall,* 235 F.3d 1211,

1215 (10th Cir.2000). Under Kansas law, "in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it." *Krantz v. Univ. of Kan.,* 271 Kan. 234, 21 P.3d 561, 567 (Kan.2001). Similarly, a "mere mistake of fact on the part of one of the parties to a release, in the absence of fraud, duress, undue influence, or mental incapacity, is not sufficient ground for the avoidance of a release." *Fieser v. Stinnett,* 212 Kan. 26, 509 P.2d 1156, 1160-61 (Kan.1973).

[6][7] The district court did not specifically address whether the settlement agreement could be set aside on any specific grounds. Instead, it granted Standard's motion to enforce the agreement because it found that the agreement was fair and reasonable; that Ms. Rogler understood the terms of the agreement at the time she entered into it; and that she accepted the benefits of the agreement by negotiating her settlement check. We agree with the district court's analysis, and we hold that Ms. Rogler has failed to establish sufficient grounds for setting aside the settlement agreement.

The misconduct alleged by Ms. Rogler must be broken into pre- and post-litigation conduct. With respect to pre-litigation, Ms. Rogler alleges that Standard acted fraudulently and in bad faith in terminating her disability benefits because it made misrepresentations regarding the acceptance and contestibility of her claim and falsely claimed she made misrepresentations in her policy application. Ms. Rogler also alleges that an agent of Standard threatened to release her medical records to the public if she pursued litigation against Standard, and, further, that an agent of Standard burglarized her office and removed certain documents from her copy of Standard's claim file. With respect to post-litigation, Ms. Rogler alleges that Mr. Nunn asserted a false affirmative defense that she made misrepresentations in her policy application as part of a preconceived plan to intimidate and coerce her into settling by making her prior medical records admissible if her case went to trial. According to Ms.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

30 Fed.Appx. 909

30 Fed.Appx. 909, 2002 WL 307731 (C.A.10 (Kan.))

(Not Selected for publication in the Federal Reporter)

30 Fed.Appx. 909, (C.A.10 (Kan.))2002 WL 307731

Rogler, Mr. Nunn then made an implicit threat to release her medical records into the public records of the district court if she did not settle by disclosing her prior medical history in the confidential settlement statement.

We are not persuaded by Ms. Rogler's arguments. First, the alleged pre-litigation conduct is what formed the basis of Ms. Rogler's substantive claims against Standard, and she cannot rely on these very same claims to attack the settlement agreement. Second, with respect to the alleged post-litigation conduct, the district court correctly found that the denials and affirmative defenses in Standard's answer were warranted based on the evidence in Standard's claim file, and we see nothing in Standard's answer that calls into question*914 the validity of the settlement agreement. Further, there is no evidence that Standard or Mr. Nunn ever threatened to publically release Ms. Rogler's medical records after she filed litigation, and we will not infer such a threat based solely on the contents of the confidential settlement statement. Accordingly, the district court did not abuse its discretion in enforcing the settlement agreement.[FN4]

> FN4. Ms. Rogler also alleges that the settlement agreement violated the public policy of Kansas and California because it required her to surrender all of her rights under the policy. Ms. Rogler has put forth no legal authority in support of this argument, and we reject it because the provision in the settlement agreement voiding Ms. Rogler's disability policy is a reasonable provision given the lump sum nature of the settlement.

B. Inherent Power Sanctions

**4 [8] The district court denied Ms. Rogler's request for sanctions pursuant to its inherent power because it found that she did not meet her burden of proving that Standard acted in bad faith. We review the district court's decision not to impose sanctions pursuant to its inherent power for an abuse of dis-

cretion. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 55, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

[9][10] It is well established that a federal district court has the inherent power to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46, 111 S.Ct. 2123 (quotations omitted). However, this power only extends to "bad faith conduct *in litigation.*" *Morganroth & Morganroth v. DeLorean,* 213 F.3d 1301, 1317 (10th Cir.2000) (emphasis in original).[FN5] As set forth above, the record does not support Ms. Rogler's claim that Standard and Mr. Nunn acted in bad faith or otherwise improperly during the course of the litigation before the district court. We therefore hold that the district court did not abuse its discretion in denying her motion for inherent power sanctions.

> FN5. This result could be different in a diversity case such as this one if there is an underlying substantive state-law policy allowing sanctions based on pre-litigation conduct. *See Morganroth,* 213 F.3d at 1317-18. However, we have not found any Kansas case law indicating that Kansas recognizes such a substantive policy, and we predict that the Kansas Supreme Court would follow the weight of federal authority and hold that a court's inherent power to award attorney's fees for bad faith conduct is limited to conduct occurring during litigation. *Cf. Richards v. Bryan,* 19 Kan.App.2d 950, 879 P.2d 638, 649 (Kan.Ct.App.1994) (noting that "it is well settled that trial courts have inherent power to impose sanctions for *litigation* misconduct") (emphasis added).

C. Rule 11 Sanctions

[11] The district court denied Ms. Rogler's Rule 11 motion because it found that Mr. Nunn performed a reasonable investigation before filing an answer on behalf of Standard and that the defenses and factual denials he included in the answer were supported

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

30 Fed.Appx. 909
30 Fed.Appx. 909, 2002 WL 307731 (C.A.10 (Kan.))
**(Not Selected for publication in the Federal Reporter)**
**30 Fed.Appx. 909, (C.A.10 (Kan.))2002 WL 307731**

Page 7

by the evidence. The court also found that Standard did not violate Rule 11. We review the district court's decision not to impose sanctions under Rule 11 for an abuse of discretion. *See Hughes v. City of Fort Collins,* 926 F.2d 986, 988 (10th Cir.1991) (quotation omitted).

[12] Rule 11 only applies to the presentation of "pleading[s], written motion[s], or other paper[s]" to the court. Fed.R.Civ.P. 11(b). Ms. Rogler's Rule 11 motion must therefore be limited to her claims that Standard and Mr. Nunn: (1) wrongfully denied liability and asserted a false affirmative defense in Standard's answer; and (2) submitted documents referring to her prior medical history as part of Standard's confidential settlement statement*915 for the improper purpose of coercing her into settling.

Neither Standard's answer nor its confidential settlement statement provide a basis for imposing Rule 11 sanctions. Most importantly, it is undisputed that there was medical evidence in Standard's claim file indicating that Ms. **Rogler** was capable of working as an attorney and that she failed to disclose certain prior medical conditions in her policy application. As a result, the district court did not abuse its discretion in denying Ms. **Rogler's** motion for Rule 11 sanctions.

**D. Other Rulings of the District Court**

We hold that the district court did not abuse its discretion in denying Ms. **Rogler's** motion for leave to file her second amended complaint. Because the settlement agreement prohibits Standard from disclosing any medical records or reports concerning Ms. **Rogler,** we also hold that the district court properly denied Ms. **Rogler's** motion for a protective order. All of the other issues raised on appeal by Ms. **Rogler** are moot.

**5 The orders of the United States District Court for the District of Kansas are AFFIRMED.[FN6]

> FN6. With respect to the motions pending on appeal, we deny Ms. **Rogler's** motion to

strike Standard's response brief and Standard's related motion for an award of costs and attorney's fees. We grant Ms. **Rogler's** motion to submit Standard's confidential settlement statement and quality assurance review under seal, and the record on appeal is supplemented with the sealed documents.

C.A.10 (Kan.),2002.
Rogler v. Standard Ins. Co.
30 Fed.Appx. 909, 2002 WL 307731 (C.A.10 (Kan.))

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**EDAR Y. ROGLER,**
**Plaintiff,** *pro se*

v.

**Department of Health and Human Services,**
**Defendant.**

)
)
)
)
)
)
)
)
)
)
)

**Case No.** WMN 0 7 CV 1 6 7 6

### COMPLAINT FOR DECLARATORY AND <u>INJUNCTIVE RELIEF</u>

1. Plaintiff, Edar Y. Rogler, and hereby files this complaint for compliance with the Privacy Act, 5 U.S.C. § 552a *et seq*. Plaintiff respectfully alleges as follows:

### <u>JURISDICTION AND VENUE</u>

2. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(a)(2) (United States as defendant), 5 U.S.C. § 552a(g)(5).

3. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

### <u>COUNT I</u>
(Violation of the Privacy Act)

4. Plaintiff realleges paragraphs 1 through 160 as if fully set forth herein.

5. The Defendant willfully and intentionally maintained confidential records on Plaintiff Rogler. This system of records includes information unlawfully obtained from the A.C.P.E. CPE Supervisor Rev. Karen Morrow and, on information and belief, from others, including other government agencies.

6. The maintenance of this system of records by Defendants is not relevant to accomplish any purpose required by statute or executive order of the President, but is part of a pattern of willful and intentional misconduct undertaken for purposes of attacking or threatening attacks on Plaintiff, and others similarly situated.

7. The Defendants' willful and intentional maintenance of this system of records on individuals, including Plaintiff, against them, violates 5 U.S.C. §§ 552a(e)(1) and (g)(1)(D), among other relevant provisions of the Privacy Act.

33

8. The Defendants' willful and intentional use and dissemination of information from this system of records to attack or threaten individuals, including Plaintiff, violates 5 U.S.C. §§ 552a(e)(1) and (g)(1)(D), among other relevant provisions of the Privacy Act.

9. As a proximate result of Defendants' willful, intentional and unlawful maintenance of information and dissemination of information from this system of records, individuals, including Plaintiff, have suffered economic and non-economic damages.

WHEREFORE, Plaintiff demands: (1) that judgment be entered against Defendants; (2that Defendants be enjoined from unlawfully disseminating information from Plaintiff's DHHS and/or other government files; (4) an award of compensatory damages in an amount not less than the $1,000 statutory minimum set forth at 5 U.S.C. § 552a(g)(4)(A); (5) an award of costs and reasonable attorneys' fees pursuant to 5 U.S.C. § 552a(g)(4)(B); and (6) such other relief as the Court deems just and proper.

Dated: 06/27/07

EDAR ROGLER, Plaintiff *pro se*
915 Boucher Avenue
Annapolis, Maryland 21403
(443) 852-6553
no fax number
edar_rogler@yahoo.com

34

%JS 44 (Rev 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
John Doe   *E BAR ROGLER* 2007 JUN 26

**DEFENDANTS** *A 10 25*

**(b)** County of Residence of First Listed Plaintiff *Anne Arundel*
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known) *WMN 07 CV 1676*

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☒ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS --Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☒ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgement

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
*28 USC 1346(a)(3), 5 USC 552a et seq*
Brief description of cause: *PRIVACY ACT*

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions)
JUDGE *(CCS) formerly (WMN) formerly 1:07 cv 0076 with*

DATE *06/26/07*
SIGNATURE OF ATTORNEY OF RECORD *1:07 cv 0110 with*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

EDAR Y. ROGLER            :
                          :
v.                        :    Civil No. WMN-07-1676
                          :
UNITED STATES DEPARTMENT   :
OF HEALTH AND HUMAN SERVICES  :

### MEMORANDUM

Numerous motions are pending[1] before the Court in this

action brought by Plaintiff, Edar Rogler, pro se[2], against

Defendant, United States Department of Health and Human Services

(DHHS), for violations of the Privacy Act, 5 U.S.C. § 552 et seq.

Plaintiff seeks both money damages and injunctive relief. The

Court will address each motion in turn.

---

[1] Plaintiff has filed twelve motions: a request for entry of
default, Paper No. 6; a motion for default judgment, Paper No. 9;
a motion to prohibit an assistant U.S. attorney from entering her
appearance in this case, Paper No. 10; five motions to strike the
government's responsive filings, Papers No. 13, 19, 20, 25 & 52;
a motion for in camera submission of evidence and a request for
an evidentiary hearing, Paper No. 21; an application for
preliminary injunction and a motion for in camera review, Paper
No. 32; a motion for dismissal without prejudice, Paper No. 40;
and a motion to amend the docket entry for paper no. 27. Paper
No. 51.
    The government has filed one motion requesting an extension
of time to respond to the application for preliminary injunction
and motion for in camera review. Paper No. 46.

[2] On February 19, 2008, Plaintiff filed a document with the
Court indicating that she has retained counsel to represent her
in this case. Paper No. 42 ("Notice of Representation" filed by
Plaintiff). Since that date, however, Plaintiff has continued to
file documents under her own signature. See, e.g., Paper No. 47;
See also Local Rule 102.1 (stating that only documents signed by
counsel may be accepted for filing by the Clerk's Office if a
party is represented by counsel in a case). As Plaintiff's
counsel has yet to file any documents in this case or otherwise
enter an appearance, the Court must assume Plaintiff remains pro
se.

## I. **Plaintiff's Motion to Dismiss**

On February 19, 2008, Plaintiff moved to dismiss her case without prejudice. Paper No. 40. That same day, she filed a notice of withdrawal of her motion to dismiss. Paper No. 39. Accordingly, the Court will direct the Clerk's Office to mark the motion to dismiss as having been withdrawn.

## II. **Plaintiff's Request for Entry of Default**

Plaintiff filed her complaint on June 26, 2007. Plaintiff is proceeding <u>in forma pauperis</u> pursuant to this Court's order, Paper No. 3, and this Court directed the Clerk of the Court to "take all necessary steps to effect service of process" upon Defendants. On August 15, 2007, summonses were issued by the Clerk's Office for DHHS, the Office of the United States Attorney, and the United States Attorney General. On August 27, 2007, the summons issued to DHHS was returned as executed. The date of service was August 20, 2007. Paper No. 5. On December 26, 2007, Plaintiff filed her request for entry of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.[3] Paper No. 6.

Rule 4(i) of the Federal Rules of Civil Procedure provides that service upon an agency of the United States "shall be

---

[3] Rule 55(a) provides: "Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."

2

effected" by (1) "delivering a copy of the summons and the
complaint to the U.S. attorney for the district in which the
action is brought" or certain designees; (2) "sending a copy of
the summons and of the complaint by registered or certified mail
to the Attorney General of the United States"; and (3) "by also
sending a copy of the summons and complaint by registered or
certified mail to the . . . agency[.]" Fed. R. Civ. P. 4(i).
Rule 12 of the Federal Rules of Civil Procedure provides, in
pertinent part, that "an agency of the United States . . . sued
in an official capacity, shall serve an answer to the complaint .
. . within 60 days after the United States attorney is served
with the pleading asserting the claims." Fed. R. Civ. P.
12(3)(A). At the time that Plaintiff filed her request for entry
of default, according to the docket entries, there had been no
return of service as to the U.S. attorney (or the U.S. Attorney
General).

    The fact that Plaintiff was proceeding in forma pauperis
would weigh against dismissal of her case for lack of
prosecution, but it does not make entry of default appropriate
absent proper service. Similarly, Plaintiff's argument that
various assistant U.S. attorneys had accessed the electronic
docket in this case to view the complaint and were therefore
effectively served is unavailing. See Reply at ¶ 4. The fact
that some assistant U.S. attorneys had actual knowledge of the

3

existence of the lawsuit does not make entry of default proper. See, e.g., Maryland State Firemen's Assoc. v. Chaves, 166 F.R.D. 353, 355 (D. Md. 1996) (setting aside the entry of a default and denying a motion for default judgment where service of process did not comply with Rule 4 despite the fact that a summons and complaint was mailed to the defendant by first class mail). As the U.S. attorney's office had not been served when Plaintiff requested the entry of default, there was no failure "to plead or otherwise defend" under Rule 55(a). The request for entry of default will be denied.

III.  **Plaintiff's Motion for Default Judgment**

It is axiomatic that, prior to obtaining a default judgment against a defendant pursuant to Rule 55(b), a default must be entered against it pursuant to Rule 55(a). 10A Wright, Miller & Kane, Federal Practice and Procedure § 2682 (3d ed. 1998). In the instant case, for the reasons already discussed, there was no entry of default under Rule 55(a). It follows that Plaintiff's motion for a default judgment against the government must be denied as premature.[4]

---

[4]Plaintiff also seeks an order compelling the U.S. Attorney General and the U.S. Attorney to turn over CM-ECF account records, ostensibly to prove that each office had actual knowledge of the complaint. For the reasons already discussed, the Defendant's actual knowledge is irrelevant to the issue of whether a default should be entered or a default judgment obtained against it. This request will be denied.
    Plaintiff also seeks an order compelling the U.S. Marshal to turn over to the Clerk's Office the return of service for the

4

Plaintiff subsequently filed a "Proof of Claim and Right to Relief" pursuant to Rule 55(d)[5] in support of her motion for a default judgment. She moved for an evidentiary hearing and to be allowed to submit evidence for <u>in camera</u> review to support her proof of claim. Since the Court has denied the motion for default judgment on the basis that the government was not in default, the motion for an evidentiary hearing in support of her motion for default judgment also must be denied.

Finally, Plaintiff also moves for an enlargement of time to effect service and to compel the Clerk of the Court and U.S. Marshals Service to effectuate service. Since filing her motion, Plaintiff filed an "Acknowledgment of Service" and attached certified mail green cards showing that the civil process clerk at the office of the U.S. attorney received a copy of the summons and complaint on January 30, 2008, and the office of the U.S. Attorney General received the same on January 31, 2008. <u>See</u> Paper No. 27. Plaintiff points out in numerous filings, however, that she herself mailed the summons and complaint by certified mail. Rule 4 provides that service may be effected by "any

---

U.S. Attorney. Plaintiff does not explain why she believes that the U.S. Marshal has served or attempted service on the U.S. Attorney, but failed to turn over proof of service or an unexecuted return. This request also will be denied.

[5]Rule 55(d), formerly Rule 55(e), entitled "Judgment Against the United States," provides that "[[a] default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court."

5

person who is at least 18 years old and not a party[.]"
(Emphasis added.)  Accordingly, the Court agrees with Plaintiff
that service was insufficient.[6]

It appears, however, that the government is not challenging
the sufficiency of service of process.  See Notice of Appearance
filed on February 7, 2008, Paper No. 23 (entering the appearance
of an assistant U.S. attorney "now that this office has been
served with the Complaint in this case"); See also Mot. for Ext.
of Time, Paper No. 46 (requesting an extension until such time as
"Defendant's responsive pleading is due to be filed in this
case").  Thus, the Court will order the government to notify this
Court in writing within five days if they intend to challenge
sufficiency of service.  If so, the Court will then order the
United States Marshal to properly serve the U.S. Attorney and the
U.S. Attorney General.

IV.  **Plaintiff's motions to strike opposition to default**

Plaintiff filed two identical motions to strike the
government's opposition to the motion for default because "the

_____

[6]Plaintiff has moved to amend the docket entry for her
"Acknowledgment of Service," Paper No. 27, to state that the
acknowledgment is "only for the purposes of Plaintiff's default
motion."  See Paper No. 51 (motion to amend).  Plaintiff
apparently does not want the Court to interpret her
acknowledgment of service as waiving her argument that she is not
permitted to serve Defendant or her argument that Defendant was
previously served when it viewed the electronic docket in this
case.  Plaintiff has adequately preserved her arguments with
respect to service in other filings.  The Court will deny the
motion to amend the docket entry.

6

Defendant, by and through his counsel, had failed to enter his

appearance" in the case. Papers No. 13 & 20. Plaintiff filed a

similar motion to strike the government's renewed opposition to

the motion for default,  Paper No. 25, and a motion to strike the

government's response to a further declaration filed by Plaintiff

in support of her motion for default judgment, Paper No. 52.

Because the request for entry of default and motion for default

judgment could be resolved without reference to the documents

Plaintiff seeks to strike, the motions will be denied as moot.

**V.  Motion to prohibit an Assistant U.S. Attorney from entering**

**her appearance in this case and motion to strike opposition**

Plaintiff filed a motion to prohibit an Assistant U.S.

attorney, Ariana Wright Arnold, from entering her appearance in

this case, Paper No. 10, and a motion to strike the government's

opposition to this motion.  Paper No. 19.  Plaintiff's motion to

prevent Ms. Arnold from ever entering her appearance in this

matter is without merit.  She complains of unspecified

threatening email correspondence from Ms. Arnold and states that

Ms. Arnold falsely represented to her that she had authority to

enter into settlement discussions before a Magistrate Judge of

this Court when in fact she did not.  Plaintiff does not provide

any support for her allegations and the motion will be denied.

See Buckley v. Airshield Corp., 908 F.Supp. 299, 304 (D. Md.

1995) (noting that, because "disqualification [of counsel] is

7

such a drastic measure, [the moving party] 'bears a high standard
of proof to show that disqualification is warranted'") (quoting
<u>Tessier v. Plastic Surgery Specialists, Inc.</u>, 731 F. Supp. 724,
729 (E.D. Va. 1990)).  The motion to strike the government's
opposition to this motion will be denied as moot.

## VI. <u>Government's Motion for Extension of Time</u>

The government has moved for an extension of time to respond
to two motions: "Motion for <u>in camera</u> submission of confidential
evidence and request for evidentiary hearing," Paper No. 21, and
an application for preliminary injunction and request for <u>in
camera</u> submission of confidential evidence.  Paper No. 32.
This Court has already denied the first motion, Paper No. 21, and
accordingly, the government's motion for extension of time is
denied as moot with respect to that motion.

Plaintiff's application for preliminary injunction was filed
on February 12, 2008.  She seeks to prevent any further
dissemination of a "confidential application" she completed for
the Association of Clinical Pastoral Education, Inc. (ACPE)
Clinical Pastoral Education (CPE) program.[7]  She claims that her
ACPE CPE application was illegally disseminated by her supervisor
when she worked in the Spiritual Ministry Department of the NIH
CC, Reverend Ray Fitzgerald, after she was terminated from her

---

[7]This program is apparently housed at the National
Institutes of Health (NIH) Clinical Center (CC).

job.

The government's response to her application was due on February 29, 2008. On that day, the government requested an extension of time to respond, arguing that the motion requires a "substantive response." The government seeks an extension until March 31, 2008. Plaintiff opposes the requested extension.

While the Court understands Plaintiff's interest in having her request for preliminary injunctive relief decided in a timely fashion, given that she made her application more than seven months after initiating the instant action, there is no reason to conclude that a delay of another three weeks would prejudice her. Accordingly, the Court will grant the government's requested extension of time until March 31, 2008.

Accordingly, IT IS this 11th day of March, 2008, by the United States District Court for the District of Maryland. ORDERED:

1.    That Plaintiff's motion for dismissal, Paper No. 40, shall be marked as WITHDRAWN;

2.    That Plaintiff's request for entry of default, Paper No. 6, is hereby DENIED;

3.    That Plaintiff's motion for default judgment, Paper No. 9, is hereby DENIED as premature, but the Court will withhold at this time is ruling on the alternative relief requested in the motion for an enlargement of time for service and to compel the

9

U.S. Marshal to effectuate service at this time;

4.    That within 5 days of the date of this Order the government shall inform the Court, in writing, if it intends to challenge sufficiency of service;

5.    That Plaintiff's motion for in camera submission of confidential evidence and request for evidentiary hearing, Paper No. 21, is hereby DENIED as moot;

6.    That Plaintiff's motions to strike, Papers No. 13, 19, 20, 25 & 52, are hereby DENIED;

7.    That Plaintiff's motion for an order prohibiting an assistant U.S. attorney from entering her appearance in this case, Paper No. 10, is hereby DENIED;

8.    That the government's motion for extension of time to file a response, Paper No. 46, is hereby GRANTED and the government shall have until March 31, 2008 to file its response to Plaintiff's motion for preliminary injunction;

9.    That Plaintiff's motion to amend docket, Paper No. 51, is hereby DENIED; and

10

10.     That the Clerk of Court shall mail or transmit a copy of this Memorandum and Order to Plaintiff and all counsel of record.

_____/s/_____
William M. Nickerson
Senior United States District Judge

EXHIBIT G

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

EDAR Y. ROGLER,                    *
    Plaintiff,

      versus                    *    Civil No. WMN-07-1676

U.S. DEPARTMENT OF HEALTH
AND HUMAN SERVICES,                *
    Defendant.

------------------------------------------oOo------------------------------------------

### NOTICE OF DISMISSAL
### [Rule 41(a)(1)]

Plaintiff *pro se*, Edar Rogler, dismisses without prejudice the instant action.

Respectfully submitted by:

DATED: 03/13/08

Edar Rogler, Plaintiff *pro se*
915 Boucher Avenue
Annapolis, Maryland  21403
(410) 280-9270

### CERTIFICATE OF SERVICE

I, HEREBY, CERTIFY that on this 13TH day of March, 2008, a copy of the foregoing was mailed first class, postage prepaid to AUSA Ariana W. Arnold, U.S. Attorney's Office, 36 South Charles Street, Baltimore, Maryland  21201.

EDAR ROGLER

1